420 F.2d 845
 UNITED STATES of America and William L. Hall, Agent of Internal Revenue Service, Petitioners-Appellees,
v.
William H. ROUNDTREE, Respondent-Appellant, and
Wanda L. Roundtree, Intervenor-Respondent-Appellant.
 No. 26986.
 United States Court of Appeals Fifth Circuit.
 November 20, 1969.
 Rehearing Denied and Opinion Clarified April 20, 1970.
 
 William H. Roundtree, Cocoa, Fla., for appellant.
 Edward F. Boardman, U. S. Atty., Tampa, Fla., Mitchell Rogovin, Asst. Atty. Gen., Johnnie M. Walters, Lee A. Jackson, John P. Burke, Joseph M. Howard, Attys., U. S. Dept. of Justice, Tax Division, Washington, D. C., Virginia Q. Beverly, Jacksonville, Fla., for appellees.
 Before WISDOM and CARSWELL, Circuit Judges, and ROBERTS, District Judge.
 WISDOM, Circuit Judge:
 
 
 1
 This appeal canvasses often-discussed issues concerning a summons of the Internal Revenue Service: What showing must the IRS make to enforce a summons against a taxpayer? How may the taxpayer attack the summons? Is a judgment of contempt for failure to obey the summons a final order? We hold that the Commissioner need make no particularized showing in order to summon a taxpayer and his records, but that if the purpose of the summons is to harass the taxpayer or solely to build a criminal prosecution, the courts will not enforce the summons. Moreover, a taxpayer is entitled to appropriate discovery procedures under the Federal Rules of Civil Procedure to prove this purpose. He must raise defenses of self-incrimination with regard to individual questions or specific records. Finally, when compliance with a district court's order that is later vacated would require surrender of the individual's defenses, and when the individual has effectively appealed that order before failing to comply, his failure to secure a stay will not, in the absence of willfulness, justify a contempt conviction.
 
 I.
 
 2
 In September of 1966, an IRS agent served a summons upon the taxpayer, William H. Roundtree. The Summons directed him to appear at the Eau Gallie, Florida, office of the IRS, there to produce books and records bearing on his and his wife's income tax liability for the years 1963, 1964, and 1965, and to testify in that regard. Roundtree appeared, but refused either to produce his records or to testify.
 
 
 3
 In December 1966 the Government petitioned under sections 7402(b)[1] and 7604[2] of the Internal Revenue Code of 1954 for a court order to enforce the summons. Roundtree filed an answer and counterclaimed for injunctive relief against further IRS proceedings. When the Government failed to answer this counterclaim within sixty days, the Clerk of the district court entered a default against the Government. But after a previously scheduled hearing held in September 1967, the district court set aside the default and granted the Government's motion to dismiss the counterclaim. The court also denied Roundtree's request for a jury trial, his motion for a writ of prohibition against the Tax Court in a deficiency proceeding relating to the year 1963,[3] and various requests for admissions and interrogatories he had propounded to the IRS.[4] The district court, however, granted the motion of Mrs. Roundtree to intervene, and allowed both taxpayers to file amended answers and counterclaims. The court subsequently quashed the Roundtrees' Notice of Taking Deposition of the IRS agent in charge of this case.
 
 
 4
 In October 1967 the Roundtrees filed an amended answer and counterclaim alleging that IRS agents had systematically harassed them; that enforcement of the summons would violate the fourth amendment and would be "in violation of the due process of law because of the Fifth Amendment of the Constitution"; that the material sought was "for the improper purpose of obtaining evidence for use in a criminal prosecution against the Respondents" — indeed, that this was its "sole objective"; that enforcement would violate the attorney-client privilege existing between Roundtree as attorney and his wife as client; and that the IRS was "abusing legal process unconstitutionally by filing the petition in this cause in this court". They demanded that the IRS be enjoined from any further proceedings until it could show "good cause for lawful and reasonable administrative procedure and/or legal action". The Government answered and moved to dismiss.
 
 
 5
 At a hearing on October 10, 1968, Roundtree stated that the "gist" of his defense was that the Government must show probable cause before the district court could enforce its summons. The district court dismissed the amended counterclaim, granted the Government's objections to further interrogatories, and ordered enforcement of the summons against Roundtree as to the years 1964 and 1965.[5] Roundtree and his wife appealed this order, but failed to seek a stay of its enforcement from the district court. Instead, Roundtree appeared at IRS offices on the appointed dates and refused to testify or produce his records, asserting that he was exercising his fourth and fifth amendment rights. At the hearing of an order to show cause why he should not be held in contempt of court, Roundtree again asserted his fifth amendment rights. The Government maintained that he had never before raised the privilege against self-incrimination. The district court adjudged Roundtree in contempt on November 8, and fined him $500, but did not enter a written order. Roundtree appealed. The district court entered a written order of contempt on November 19, and once more ordered Roundtree to produce his books and records. He again appealed and this time moved for a stay of execution of the order and any further proceedings. The district court denied Roundtree's motion for a stay; this Court granted it pending his appeal. The taxpayer appeals from the three district court orders of October 10 (judgment enforcing the summons), November 8 (oral judgment of contempt), and November 19, 1968 (written judgment of contempt).
 
 II.
 
 6
 United States v. Powell, 1964, 379 U. S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112, dealt explicitly with the statutorily imposed standards that the Commissioner must meet in order to enforce his summons. Section 7605(b)[6] of the Code prohibits "unnecessary examination or investigations". In Powell, the running of the statute of limitations precluded any civil liability. Yet, the Supreme Court held that the Commissioner could secure judicial enforcement of his summons consistently with § 7605(b) even though he had no probable cause to suspect fraud. The opinion states that "the Commissioner need not meet any standard of probable cause to obtain enforcement of his summons, either before or after the three-year statute of limitations on ordinary tax liabilities has expired". The statutory scheme requires only that he show that "the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose", that he did not already have the information he sought, and that he had followed the Code's administrative steps. 379 U.S. at 57-58, 85 S.Ct. at 255. The Court, importantly, went on to admonish that
 
 
 7
 [i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation. 379 U.S. at 58, 85 S.Ct. at 255.
 
 
 8
 Powell did not explicitly consider constitutional limitations on the Commissioner's power. But in our view, Camara v. Municipal Court, 1967, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930, and See v. City of Seattle, 1967, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943, two recent fourth amendment decisions, compel no different result. In those two cases the Court set out to "reexamine whether administrative inspection programs, as presently authorized and conducted, violate Fourth Amendment rights". 387 U.S. at 525, 87 S.Ct. at 1729.[7] The Supreme Court in Camara found that the fourth amendment's basic purpose is "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials". 387 U.S. at 528, 87 S.Ct. at 1730. The use of a search warrant is necessary, the Court ruled, even in a case where the state court had found that the search was "`part of a regulatory scheme which is essentially civil rather than criminal in nature, * * * [and the] right of inspection * * * is limited in scope and may not be exercised under unreasonable conditions'". 387 U.S. at 528, 87 S.Ct. at 1730.
 
 
 9
 In terms of protection to the individual, a summons submitted to a court for enforcement is at least equivalent to a search warrant.[8] Our task is to apply to the process the analysis of interests that Camara considered requisite to the issuance of a search warrant.[9]
 
 
 10
 The Camara Court spoke in terms of "balancing the need to search against the invasion which the search entails". 387 U.S. at 537, 87 S.Ct. at 1735. It weighed the history of judicial and public acceptance of a search, the significance of the public interest demanding satisfaction and the probable unavailability of alternative means to satisfy it, and the extent of the invasion of privacy. In tax investigations, courts have certainly long been enforcing the Commissioner's summons, and have considered it an acceptable way of ensuring compliance with the revenue laws. See Sale v. United States, 8 Cir.1956, 228 F. 2d 682, 684, cert. denied, 1956, 350 U.S. 1006, 76 S.Ct. 650, 100 L.Ed. 868. See generally Powell.
 
 
 11
 The individual taxpayer on whom an audit has focussed is no doubt reluctant to see his records disclosed to the taxing authorities, but we are unable to say that the public has exhibited a strong animosity toward this method of securing proper compliance with the revenue laws. The significance of the public interest, governmental revenue, is beyond dispute. The fact is that Congress built the tax code upon the principle of self-assessment and voluntary compliance with the Code's rules and regulations. To determine deviations from its rules, the IRS must place unusual reliance upon the taxpayer's own records and statements.[10]
 
 
 12
 The final factor, the invasion of privacy, is difficult to evaluate. In Camara the Court noted that the search there was neither criminally oriented nor personal in nature. Although the IRS summons does not involve a search of the person of the taxpayer but an examination of his papers and his testimony,[11] typically it is unclear whether a given tax investigation will lead to criminal proceedings. The IRS often must see the taxpayer's records before it can make that determination. Powell, 379 U.S. at 53-54, 85 S.Ct. 248. But in balancing the need to investigate against the invasion, we conclude that the resolution reached in Powell is still correct. Like the Camara housing inspections, the effective operation of the revenue system requires that the Commissioner be free to inspect taxpayers' records in order to ensure compliance with the revenue laws. Furthermore, courts may limit the invasion of privacy through the judicial scrutiny to which a summons is subject for its enforcement and through the standards enumerated in Powell of legitimate purpose, proper procedure, relevance, and refusal to allow abuse of the courts' process. Thus, although our reiteration in Venn v. United States, 5 Cir.1968, 400 F.2d 207, 210, of Powell's language that probable cause is unnecessary may be misleading in light of Camara and See, we are satisfied that the Commissioner meets the standard of probable cause when he meets the requirements of Powell and Venn.[12]
 
 
 13
 Roundtree, however, contends that the summons issued against him did not meet the Powell and Venn requirements. He makes two significant arguments: (1) that the sole purpose of the summons is the establishment of a criminal case against him, and (2) that the IRS and its agents are bent upon a considered course of personal harassment toward him. We declared in Venn that it "would be a misuse of the tax summons for the IRS to endeavor to use it to obtain evidence for use in an existing criminal prosecution", but that "the mere fact that the evidence obtained through the summons may be later used against the taxpayer in a criminal prosecution is no barrier to enforcement". 400 F.2d at 210. This rule is consistent with § 7602, authorizing a summons "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax * * *." As the Ninth Circuit has pointed out, the statute "does not limit the examination it authorizes solely to the issue of correctness". Boren v. Tucker, 9 Cir.1956, 239 F.2d 767, 772. So long as the IRS does have this purpose, other purposes need not vitiate its authority. Lash v. Nighosian, 1 Cir. 1959, 273 F.2d 185, 188, cert. denied, 1960, 362 U.S. 904, 80 S.Ct. 610, 4 L. Ed.2d 554; see United States v. Mercurio, 5 Cir. Oct. 30, 1969, 418 F.2d 1213. In light of the fact that the IRS has filed deficiency notices for all of the years in question,[13] the taxpayer faces a difficult task in proving that the sole purpose of the summons was criminal prosecution. Of course, if he proves harassment, we will not allow the judicial process to be abused by assisting in that harassment. Powell, 379 U.S. at 58, 85 S.Ct. 248. The Supreme Court has said and we have repeated that the burden of proof is on the taxpayer. 379 U.S. at 58, 85 S.Ct. 248; Venn, 400 F.2d at 210. The IRS has denied both allegations and submitted affidavits to buttress its position. But Roundtree argues that the district court prevented his meeting the burden of proof by "den[ying] every effort of the taxpayers to use pre-hearing discovery".
 
 
 14
 A proceeding to enforce a summons is an adversary proceeding. Reisman v. Caplin, 1964, 375 U.S. 440, 446, 84 S.Ct. 508, 11 L.Ed.2d 459; Dunn v. Ross, 5 Cir.1966, 356 F.2d 664, 667. In the absence of other statutory directions, the Federal Rules of Civil Procedure apply. Fed.R.Civ.P. 81(a) (3); Powell, 379 U.S. at 58 n. 18, 85 S.Ct. 248; United States v. McKay, 5 Cir. 1967, 372 F.2d 174. We have construed the thrust of this determination to be that "the parties must be given a full opportunity in an adversary hearing to present their case". Venn, 400 F.2d 212 n. 12. We do not disturb the district court's dismissal of the interrogatories, requests for admissions, and motion to produce propounded by the taxpayer, for they were clearly irrelevant or overbroad.[14] But we cannot agree with the court's granting of the Government's motion to quash the taxpayer's attempted deposition of the agent in charge of this case. The Government argued that because it had instituted "a summary proceeding in aid of an administrative investigation rather than a plenary action", the district court should exercise its discretion under Fed.R.Civ.P. 81(a) (3) to deny all discovery, and now seeks to justify that denial on appeal. We have been careful to avoid ruling "that discovery would always be improper in cases of this nature", 400 F.2d at 212 n. 12. We conclude that the taxpayer is entitled to investigate the IRS's purpose where such purpose has been put in issue and may affect the legality of the summons.[15] Rule 26(b) instructs us that a party is entitled to examine a deponent on "any matter, not privileged, which is relevant to the subject matter involved in the pending action". The district court has authority to curtail the deposition if it is conducted unreasonably. Fed.R.Civ.P. 30(d); United States v. Howard, 3 Cir.1966, 360 F.2d 373, 381. But if the taxpayer succeeds in producing evidence that would repel a motion for summary judgment under Rule 54, the district court should allow him to proceed to trial.
 
 III.
 
 15
 We may quickly dispose of Roundtree's contentions as to self-incrimination and the objections of the IRS. The fact situation could assume one of several postures on remand. We have already pointed out that if Roundtree is able to prove that the sole purpose of the summons is to build a criminal prosecution, the summons must fail. Roundtree's pleadings adequately preserved this defense. If the IRS sustains its contention that this is a civil investigation, the mere fact that evidence might be used against Roundtree in a later prosecution will not support a claim of self-incrimination. 400 F.2d at 210-212.[16] If, however, Roundtree can show that the investigation has become "an inquiry with dominant criminal overtones", he is entitled to raise his fifth amendment objections. Stuart v. United States, 5 Cir. 1969, 416 F.2d 459. But even if the danger of self-incrimination is great, Roundtree's remedy is not to voice a blanket refusal to produce his records or to testify.[17] Instead, he must present himself with his records for questioning, and as to each question and each record elect to raise or not to raise the defense. The district court may then determine by reviewing Roundtree's records and by considering each question whether, in each instance, the claim of self-incrimination is well-founded.[18] Since a blanket refusal is unacceptable, we are unwilling to say that Roundtree waived this defense.
 
 IV.
 
 16
 There remains the question whether despite our remand, Roundtree's conviction for contempt should nevertheless stand. The Government points to Roundtree's failure to request a stay of the district court's order before violating it, and refers us to cases such as Walker v. City of Birmingham, 1967, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210, and United States v. United Mine Workers, 1947, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884, in support of affirmance.
 
 
 17
 The Government admits that Roundtree did properly file his appeal from the district court's order enforcing the summons. Roundtree accomplished this before the dates on which the order directed him to produce his records. Clearly he had the right to such an appeal. Reisman v. Caplin, 375 U.S. at 449, 84 S.Ct. 508, 11 L.Ed.2d 459. Had he testified or produced his records on the appointed dates, he would of course have mooted the appeal. Baldridge v. United States, 5 Cir.1969, 406 F.2d 526. Nor is Roundtree attempting collaterally to attack by disobedience an order which he had not appealed. The order is properly before us on direct appeal. Consequently, the only question is whether Roundtree's neglect to secure a stay of the order which we are now reversing amounted to contempt. Since there is no contention that the failure was wilful, we conclude that it did not.
 
 
 18
 We do not find United Mine Workers or Walker persuasive authority to the contrary. Walker involved relationships between two branches of the federal system. The Supreme Court determined not to interfere with the state judiciary's method of ensuring respect for its mandate. That factor of comity is not present in our review of a federal district court. Furthermore, despite the arguments that might have been raised to limit the authority of an ex parte order, the Supreme Court used that consideration against the contemnors. It reasoned that one who had not yet argued his position before the state court ought not to violate its mandate without giving it the benefit of his argument. Again, Roundtree had fully presented his position to the district court. In addition, the contemnors in Walker arguably would not have entirely forfeited their first amendment rights by delaying their civil rights march, although admittedly its impact would have diminished with the passing of Easter. Here, Roundtree stood to forfeit his defenses entirely. In United Mine Workers, the district court's order was eventually upheld on appeal, and again the contemnors arguably would not have forfeited their right to strike by delaying it. Most importantly, however, the decree in this case was not of the significance of the decrees in United Mine Workers and Walker. Those cases sought respectively to halt a nationwide coal strike, and to implement the "legitimate state concern" of the "prevention of public disorder and violence". Walker, 388 U.S. at 316, 87 S.Ct. at 1829. The challenge to the district court's authority here is much less significant.
 
 
 19
 We emphasize that we do not approve Roundtree's failure to seek a stay of the district court's order. But in the absence of evidence of wilfulness, we reverse the judgment of contempt.
 
 V.
 
 20
 We deal summarily with taxpayer Roundtree's remaining contentions. Fed.R.Civ.P. 55(e) prohibits entry of default judgment against the United States, its officers or agencies, "unless the claimant establishes his claim or right to relief by evidence satisfactory to the court". Thus, the district court correctly set aside the Government's default in answering Roundtree's counterclaim, and treated the claim on the merits. Furthermore, Roundtree has an adequate remedy in the defenses he can raise to enforcement of the summons. We affirm the district court's conclusion that he is not entitled to injunctive relief. See Reisman v. Caplin. We note the rest of Roundtree's contentions and find them to be without merit.
 
 
 21
 We reverse and remand for further disposition consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 26 U.S.C. § 7402(b) (1964):
 If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.
 
 
 [2]
 26 U.S.C. § 7604 (1964):
 (a) [Substantially similar to § 7402 (b), note 1 supra]
 (b) Whenever any person summoned under section 6420(e) (2), 6421(f) (2), 6424(d) (2), or 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary or his delegate may apply to the judge of the district court or to a United States commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience.
 Reisman v. Caplin, 1964, 375 U.S. 440, 448, 84 S.Ct. 508, 513, 11 L.Ed.2d 459, established that § 7604(b) "was intended only to cover persons who were summoned and wholly made default or contumaciously refused to comply". Consequently, we treat this as a petition under either § 7402(b) or § 7604(a).
 
 
 [3]
 During the proceedings below, the Commissioner of Internal Revenue issued a notice of deficiency for 1963, taxpayers sought a redetermination of the deficiency in the Tax Court, and the IRS dropped the year from its request for enforcement. After oral argument on the appeal, taxpayers petitioned this Court to dismiss the proceedings as moot, on the ground that the Commissioner has now issued notices of deficiency for all the years in question and the taxpayers have sought redetermination of those deficiencies in the Tax Court. We reject this contention. Proceedings in the tax court do not extinguish the Commissioner's summons power. National Plate & Window Glass Co. v. United States, 2 Cir. 1958, 254 F.2d 92, cert. denied, 1958, 358 U.S. 822, 79 S.Ct. 35, 3 L.Ed.2d 63; Norda Essential Oil & Chem. Co. v. United States, 2 Cir. 1958, 253 F.2d 700
 
 
 [4]
 Among other things, Roundtree sought to elicit detailed information concerning publicly reported cases of wiretapping and electronic eavesdropping by the IRS; to inspect all the IRS's records and files relating to himself and his wife; and to ascertain the basis for the IRS claim of deficiency against him and his wife for 1963
 
 
 [5]
 See note 3 supra.
 
 
 [6]
 U.S.C. § 7605(b) (1964):
 No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.
 
 
 [7]
 Camara and See considered fourth amendment rights as they are enforced against the states under the fourteenth amendment.
 
 
 [8]
 The requirement of judicial enforcement marks the important distinction of this case from Mancusi v. DeForte, 1968, 392 U.S. 364, 371, 88 S.Ct. 2120, 20 L. Ed.2d 1154, where the Supreme Court found insufficient under fourth amendment standards an administrative search warrant not subjected to the review of a "neutral and detached magistrate". Some commentators have argued that service of a summons upon a taxpayer is itself so coercive that a taxpayer, unaware of his right to compel the IRS to go to the district court for enforcement, may be persuaded to prejudice his fourth and fifth amendment rights by automatically surrendering his books and giving testimonySee, e. g., Lipton, Constitutional Rights in Criminal Tax Investigations, 45 F.R.D. 323, 328 n. 24 (1968). If that is so, a colorable argument can be made that certain warnings, analogous to those required by Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, are necessary in order to ensure that the waiver of constitutional rights is voluntary and intelligent. See Lipton at 333-340. But cf. United States v. Jernigan, 5 Cir. 1969, 411 F.2d 471, 472. But that set of circumstances is not properly before us here. Taxpayer Roundtree was well aware of his rights, compelled the IRS to petition the district court for enforcement, and preserved his constitutional objections. So long as the summons is subjected to court review, it certainly meets the requirements of a search warrant regardless of whether it is criminally oriented.
 
 
 [9]
 We note in passing that the Supreme Court's use of probable cause as "the standard by which a particular decision to search is tested against the constitutional mandate of reasonableness", 387 U.S. at 534, 87 S.Ct. at 1734, implicitly rejects the terminology ofPowell and our adoption of that language in Venn v. United States, 5 Cir. 1968, 400 F.2d 207, 210 that the courts should not "hold the IRS to a showing of the nature of probable cause".
 
 
 [10]
 See Bolich v. Rubel, 2 Cir. 1933, 67 F. 2d 894, 895; Ritholz, The Commissioner's Inquisitorial Powers, 45 Taxes 782, 784 (1967). This factor has also been particularly evident in the related area of tax fraud. Abbott, Handling the Potential Tax Fraud Case, Tulane 17th Tax Inst. 793, 794-795 (1968); Duke, Prosecutions for Attempts to Evade Income Tax: A Discordant View of a Procedural Hybrid, 76 Yale L.J. 1, 9, 16-20 (1967).
 
 
 [11]
 The fourth amendment protects the people as to their "houses, papers, and effects", as well as their "persons", but the Supreme Court inCamara indicated that it considers a personal search to be a greater invasion of privacy (protection of which is the "basic purpose" of the fourth amendment, 387 U.S. at 528, 87 S.Ct. 1727) than other types of searches such as a housing inspection ("a relatively limited invasion of the urban citizen's privacy", 387 U.S. at 537, 87 S.Ct. at 1735).
 
 
 [12]
 See United States v. DeGrosa, 3 Cir. 1969, 405 F.2d 926, 928; Justice v. United States, 1968, 390 U.S. 199, 88 S.Ct. 901, 19 L.Ed.2d 1038 (mem.), aff'g United States v. First National Bank, 274 F. Supp. 283 (E.D.Ky.1967).
 
 
 [13]
 See note 3 supra.
 
 
 [14]
 See note 4 supra.
 
 
 [15]
 See United States v. Nunnally, 278 F. Supp. 843 (W.D.Tenn.1968); United States v. Moriarty, 278 F.Supp. 187 (E. D.Wis.1967); Kennedy v. Rubin, 254 F. Supp. 190 (N.D.Ill.1966); cf. Goodman v. United States, 9 Cir. 1966, 369 F.2d 166, 168-169.
 
 
 [16]
 We repeat our footnote inVenn that "the Court's enforcement of the summons in these circumstances constitutes no predetermination of the question whether evidence so obtained may be admissible in a criminal prosecution". 400 F.2d at 211 n. 7.
 
 
 [17]
 Compare Justice Holmes's refusal in United States v. Sullivan, 1927, 274 U.S. 259, 264, 47 S.Ct. 607, 608, 71 L.Ed. 1037, to allow a taxpayer to "draw a conjurer's circle around the whole matter by his own declaration that to write any word upon the government blank would bring him into danger of the law"
 
 
 [18]
 See Warnell v. United States, 5 Cir. 1961, 291 F.2d 687; Landy v. United States, 5 Cir. 1960, 283 F.2d 303, cert. denied, 1961, 365 U.S. 845, 81 S.Ct. 805, 5 L.Ed.2d 810; Daly v. United States, 8 Cir. 1968, 393 F.2d 873, 878. That is also the time to examine the claim of attorney-client privilege between Roundtree and his wife, see Colton v. United States, 2 Cir. 1962, 306 F.2d 633, 639, cert. denied, 1963, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499, potentially a meritorious defense as to some questions, see id. at 637; Reisman v. Caplin, 375 U.S. at 449, 84 S.Ct. 508, 11 L.Ed.2d 459.