Homer Lee GOWEN, Petitioner,

v.

J. A. WILKERSON, Sheriff, City of
Lynchburg, Respondent.

Civ. A. No. 73–C–43–L.

United States District Court,
W. D. Virginia,
Lynchburg Division.

Oct. 1, 1973.

William M. McClenny, Jr., Amherst, Va., for petitioner.

Royston Jester, III, Lynchburg, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This case is before the court upon a petition for habeas corpus pursuant to 28 U.S.C. § 2254, filed by counsel for Homer Lee Gowen, who contends that he has been aggrieved by the final judgment of the Circuit Court of the City of Lynchburg, Virginia, entered October 26, 1972, against him in favor of Mrs. Gowen, petitioner's wife, for $2,170.00 and against him in favor of the Commonwealth in the form of a six months sentence with the Bureau of Correctional Field Units. Petitioner was found guilty of contempt as a result of his failure to show cause at a hearing before Hon. William W. Sweeney, Judge of the Circuit Court of the City of Lynchburg, on October 26, 1972, why he had failed to conform to a decree entered by that court on September 28, 1970, awarding support payments of $25.00 per week to Mrs. Gowen. Petitioner has satisfied the requirement of exhaustion of state remedies, having presented the questions in his petition first to the Supreme Court of Virginia, which summarily denied his petition for a writ of error. No relief by way of state habeas corpus was sought.

Petitioner is on bond pending the outcome of his application to this court. Under 28 U.S.C. § 2254(a) federal courts have jurisdiction to entertain writs of habeas corpus only if the petitioner is "in custody" in violation of the laws or Constitution of the United States. In light of Walker v. Dillard, No. 73–1108 (4th Cir. May, 1973) (Mem.Dec.), this court finds that even though petitioner has not yet been restrained by the defendant, he is theoretically "in custody" for purposes of 28 U.S.C. § 2254(a).

At the October 26, 1972, hearing, at which petitioner was represented by counsel, petitioner was called as an "adverse witness" by Mr. William Rosenberger, Jr., counsel for Mrs. Gowen. Petitioner contends that this procedure deprived him of due process of law in that he was involuntarily made a witness against himself in violation of his Fifth Amendment privilege against self-incrimination, and that evidence wrongfully and unlawfully elicited from him was used against him to convict him of contempt.[1] No other questions are presented by petitioner.

Petitioner was convicted for "contempt of court in failing or refusing to comply with any order or decree for support, maintenance or alimony" pursuant to § 20–115 of the Virginia Code (1960 Rep.Vol.). Considering the nature of the type of contempt proceeding to which petitioner was subjected, after due reflection, the court must conclude that it is a matter of conjecture as to whether the petitioner was being tried civilly or criminally or in both forms at once. By way of comparison, § 20–115 seems similar in language to the applicable section of the Virginia criminal contempt statute, § 18.1–292(5). The Supreme Court of Virginia has stated that

---

1. Petitioner does not specify what evidence in particular was wrongfully used by the court.

there "is no comprehensive test by which contempts may be classified as either civil or criminal."[2] Local 333B, United M.D., etc. v. Commonwealth, 193 Va. 773, 71 S.E.2d 159, 163 (1952). Indeed, in affirming a jail sentence of ten days (which did not have to be served if the temporary alimony was paid off within fifteen days), that court observed: "The imprisonment is not ordered simply to enforce the payment of the money, but to punish for the wilful disobedience of a proper order of a court of competent jurisdiction." West v. West, 126 Va. 696, 101 S.E. 876, 877 (1920). This would seem to connote a criminal proceeding, and indeed, the Virginia Supreme Court has gone so far as to say that a contempt proceeding for failing to pay alimony is *quasi* criminal. Branch v. Branch, 144 Va. 244, 132 S.E. 303, 305 (1926). *See also* Lindsey v. Lindsey, 158 Va. 647, 164 S.E. 551, 553 (1932).

The dual nature—both civil and criminal—of the procedure under which petitioner was convicted is readily apparent. The contempt hearing was stayed Gowen v. Gowen, accrued support payments were sought, and Mrs. Gowen's attorney conducted examination of witnesses and called petitioner as an "adverse witness" —all elements of a civil proceeding. In addition, however, § 20–115 of the Virginia Code empowered the state court to sentence petitioner to up to twelve months on the state correctional road force upon a conviction for contempt of court in failing or refusing to comply with a support order.

Regardless of the nature of the contempt proceeding, petitioner was entitled to the Fifth Amendment privilege against self-incrimination. *See* Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), Malloy v. Hogan, 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). *See also* Gompers v. Bucks Stove & Range Co., *supra*, 221 U.S. at 448, 31 S.Ct. 492.

There is a danger inherent in the uncertainty as to when the privilege may be asserted in such a dual proceeding as the one at hand, as petitioner's complaint reflects. In being called as an "adverse witness", in a civil sense, to account for why he had failed to make support payments, petitioner was at the same instant giving testimony that could be used to find him guilty of criminal contempt. Since by the time of the "show cause" hearing events had proceeded beyond merely the civil stage, and petitioner was subject to possible criminal punishment, petitioner was entitled to assert his Fifth Amendment privilege at the hearing. *Cf.* United States v. Roundtree, 420 F.2d 845, 852 (5th Cir. 1969), rehearing denied (1970). But even if the danger of self-incrimination was great, petitioner's remedy was not to voice a blanket refusal to testify, as his counsel intimates was done, but rather to take the stand and as to each question elect to raise or not to raise the Fifth Amendment privilege. United States v. Roundtree, *supra*, at 852.

The question at this point becomes whether petitioner effectively and intelligently waived the privilege against self-incrimination, and, then, if this court finds that he did not, whether it constitutes beyond a reasonable doubt more than harmless error.

This court is not advised whether petitioner was informed of his privilege against self-incrimination. At the time

---

2. *See* Mr. Justice Lamar's opinion in Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 441–443, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911), in which he stated that "contempts are neither wholly civil nor altogether criminal" and "it may not always be easy to classify a particular act as belonging to either one of these two classes." 221 U.S. at 441, 31 S.Ct. at 498. Justice Lamar notes that "many civil contempt proceedings have resulted not only in the imposition of a fine, payable to the complainant, but also in committing the defendant to prison." 221 U.S. at 441, 31 S.Ct. at 498. *See also* 4 Michie, Contempt, § 3, p. 242.

petitioner was called to the stand as an "adverse witness", petitioner's counsel made no real objection, stating merely:

> If Your Honor please, we would like to make sure that Mr. Rosenberger understands he is making this man his own witness and he is bound by his testimony. Tr. 20.

The Court replied:

> He can call him as an adverse witness. He has a right to do it and has a right to lead him. Tr. 20.

██ Petitioner's attorney made no further objection, save for one that the questioning of Mr. Rosenberger was becoming a "fishing expedition." Tr. 23. This failure to object during the contempt proceedings probably in itself constitutes a waiver of petitioner's right to refrain from testifying, as far as the power of this court to review that act is concerned. *Cf.* Kirby v. Warden, Maryland Penitentiary, 261 F.2d 345 (4th Cir. 1958), cert. denied, 359 U.S. 938, 79 S.Ct. 654, 3 L.Ed.2d 639 (1959). *See also* Chavez v. State of New Mexico, 456 F.2d 1072 (10th Cir. 1972). However, considering the bifurcated nature of the proceeding, the failure of petitioner's attorney to make any objection, and the statement by the court that Mr. Rosenberger had a "right" to call petitioner, it is difficult to perceive how petitioner could have knowingly and intelligently waived his privilege against self-incrimination. The very nature of this type of contempt proceeding seems to cloud the right to assert constitutional safeguards. *See* comment, "Lack of Due Process in Virginia Contempt Proceeding for Failure to Comply with Order for Support and Alimony," 4 U.Rich.L.Rev. 128 (1969).

██ Even assuming that petitioner's privilege against self-incrimination was violated, it is the opinion of this court, after having carefully examined the record, that considering the circumstances in their entirety, such error was harmless beyond a reasonable doubt, in accordance with the standard utilized in Chambers v. Maroney, 399 U.S. 42, 53, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), rehearing denied, 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94 (1970). Petitioner's conviction must be viewed in the totality of the circumstances. His conviction was a result of a "show cause" proceeding growing out of Mrs. Gowen's crossbill for support in a divorce proceeding that petitioner himself instigated. The original order to make support payments was one which petitioner was bound to comply with, even though the order may have been based upon an erroneous finding.[3] *See* Nicholas v. Commonwealth, 186 Va. 315, 42 S.E.2d 306, 309 (1947). The October 26, 1972, "show cause" hearing was petitioner's second on the issue of nonpayment. On August 27, 1971, the trial court continued a similar show cause order, and did not adjudicate petitioner guilty of failure to obey the decree of the court, because at that time the court was undecided whether petitioner had had notice of the support decree. Tr. 3. (Petitioner apparently had been working in Germany. Tr. 21) Most importantly, there is adequate testimony from Mrs. Gowen, Tr. 7–18, standing alone, to support the state court's finding petitioner guilty of contempt for *past* behavior (non-compliance with the support order) notwithstanding any testimony petitioner gave as an "adverse witness." It is evident from Mrs. Gowen's testimony that petitioner had not made any support payments since the order of September 28, 1970, and the only payment that Mrs. Gowen received was some $480.00 garnisheed from his salary (Tr. 8). This would seem adequate evidence upon which the state court could impose punishment for the wilful disobedience of its order. If anything, since petitioner attempted to explain in his testimony why he was not liable for the support payments, his testimony is more excul-

---

3. Petitioner stated that he failed to make support payments because he was unclear as to whom the payments were to support (Tr. 28), and because he denied the paternity of Mrs. Gowen's child (Tr. 31).

patory than inculpatory. The hearing transcript contains evidence, aside from petitioner's testimony, sufficient to sustain a conviction, or, in any event, to show that the conviction was not so totally devoid of evidentiary support as to raise a due process issue that would afford petitioner a remedy in a federal court on a writ of habeas corpus. *See* Grundler v. North Carolina, 283 F.2d 798 (4th Cir. 1960), cert. denied, 362 U. S. 917, 80 S.Ct. 670, 4 L.Ed.2d 738 (1960).

Finding as we have that there was adequate evidence for a conviction for past actions of petitioner, this court will not speculate on what it perceives to be the underlying impetus of petitioner's complaint—that petitioner's demeanor on the stand may have contributed to the severity of his sentence. Six months service on the state road force may seem a harsh remedy, but it is one within the twelve month limit of § 20–115. The Virginia Supreme Court has said of the use of this penalty for contempt for failure to pay support:

> While the remedy, imprisonment, is severe and harsh, and therefore should not be enforced except where it appears that the defendant is contumacious, still where this does appear there should be no hesitation in imposing the penalty. West v. West, *supra*, 101 S.E. at 878.

■■ Whether petitioner's past acts were sufficiently contumacious to warrant six months on the road force is strictly a matter of interpretation and application of state law, best left to the state courts. Any opinion as to how petitioner's demeanor in the state court may have influenced the judge would be purely speculation on the part of this court. Where the sentence is within the limit set by statute, a federal court is barred, except in the most exceptional circumstances, from any inquiry it might otherwise be inclined to make. United States v. Lewis, 392 F.2d 440 (4th Cir. 1968), citing United States v. Martell, 335 F.2d 764, 766 (4th Cir. 1964). The length of sentence is not a federal question since it involves the interpretation of state statutes and does not involve a constitutional question. Avent v. Peyton, 294 F.Supp. 262 (E.D. Va.1968).

For the above reasons, it is adjudged and ordered that the petition for a writ of habeas corpus be dismissed and the writ denied.