UNITED STATES of America,
Petitioner,

v.

Jack RYAN, as partner of Herzfeld &
Stern, Respondent,

and

Melvin Shenweather, Intervenor.

No. M–18–304 (IBC).

United States District Court,
S. D. New York.

Feb. 29, 1980.

⚷1603

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for petitioner; Stanley D. Davis, Asst. U. S. Atty., New York City, of counsel.

Philip T. Weinstein, Miami, Fla., for intervenor.

## OPINION

IRVING BEN COOPER, District Judge.

In this summary judgment application, we are asked to determine the validity of summary enforcement (without discovery) of a third-party administrative summons issued by the Internal Revenue Service pursuant to a tax investigation.

### The Facts

Internal Revenue Service (IRS) Special Agent Charles Brock, Criminal Investigation Division, is conducting an investigation into the income tax records of Melvin Shenweather, a resident of Miami, Florida (hereinafter referred to as the taxpayer).

The purposes of the investigation are: (a) to determine the correctness of taxpayer's 1974–75–76 tax returns, and (b) to determine taxpayer's possible liability in 1977, a year for which no return was filed.

On May 29, 1979, an administrative summons was issued by Special Agent Brock, in accordance with Internal Revenue Code requirements, directing that Jack Ryan, a partner in the New York brokerage of Herzfeld & Stern, appear, testify and produce certain of taxpayer's records in his possession. Taxpayer, through his attorney, directed Ryan not to comply with the summons. Ryan did not appear, but has filed an affidavit that neither he nor his firm has any interest in the outcome of the case and that both will comply with any decision of the Court. See Affidavit of Jack Ryan, verified December 14, 1979, p. 2, ¶¶ 5–6.

On September 19, 1979, the Government brought on an order to show cause directing Ryan to give reason why he should not comply with the summons. Attached to the order was a verified petition to Enforce Internal Revenue Summons as well as a supporting affidavit from Brock which disclosed that his investigation had been included in the IRS Manhattan District Strike Force Program (solely administered by the IRS), that the IRS did not presently have custody of the requisite records, and that no recommendation for criminal prosecution had yet been made to the Justice Department or any grand jury. Affidavit of Charles Brock, verified September 11, 1979, p. 4, ¶ 10.

Taxpayer responded by serving the IRS with a Notice of Taking Deposition which included a request for production of documents. He seeks to question Brock and an unnamed IRS representative on the nature of the investigation, and to have them produce all records dealing with the "strike force" program, including

all correspondence, memoranda, and communications establishing said strike force and all documentation, letters, memoran-

da, forms, communications or records relating to the selection of MELVIN (MELVYN) SHENWEATHER, as a target of such strike force and all letter [sic], communications, memoranda or documents assigning speical [sic] agent CHARLES C. BROCK of the Manhattan District to said investigation.

Notice of Taking Deposition, p. 2.

On October 19, 1979, taxpayer served Brock with a *subpoena duces tecum* to compel the agent's attendance (in the event a hearing was ordered) to testify on the documents requested in the notice of deposition. Brock did not testify at the hearing for none was ordered, nor were the documents produced by the IRS.

By letter of October 25, 1979, taxpayer proposed discovery of the same documents previously sought as well as the submission of a supplemental affidavit from Brock concerning any contacts between the IRS and the Justice Department. The Government again refused to supply the documents but did agree to provide the additional affidavit.

By stipulation, the petition to enforce the summons was made returnable on December 7, 1979.

On that date, the Government moved the Court: (a) to grant summary judgment (under Fed.R.Civ.P. 56) directing that Ryan obey the summons; (b) to quash (under Fed.R.Civ.P. 45(b)) the subpoena served on Special Agent Brock; and (c) to issue a protective order, pursuant to Fed.R.Civ.P. 26(c), directing that taxpayer's requested discovery be denied. Annexed to the Notice of Motion was a statement of facts in issue as required by Rule 9(g) of the General Rules of this Court.

Taxpayer contests the motion for summary judgment and asserts the desirability of additional discovery before the summons is enforced. He alleges that the purpose of the investigation by the "strike force" is solely to further criminal prosecution; that the summons was issued by the IRS in bad faith. He further asserts that the deposition of Special Agent Brock, as well as the requested discovery, is necessary before a determination is made that no genuine issue

of fact exists as to the nature of the inquest. Petition to Intervene of Melvin Shenweather, pp. 1–2.

For the reasons delineated below, we direct that summary judgment be granted, that the subpoena directed to special agent Brock be quashed, and that taxpayer's proposed discovery be denied.

### Statutory Background

The IRS is given authority by I.R.C. § 7602 to issue a summons to ascertain the "correctness of any return" or to "make" a return "where none has been made" to determine a taxpayer's liability. *Id.* The IRS is empowered to "examine any books, papers, records, or other data which may be relevant or material to such inquiry" as well as "to summon the person liable for tax." *Id.*

This grant of administrative power also extends to "any transferee or fiduciary" of the taxpayer. The IRS may require the appearance of *"any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax . . . and to produce such books, papers, records, or other data."* *Id.* (emphasis supplied)

Although § 7602 has been applied to third parties (under the provision cited *supra*), the Tax Reform Act of 1976 added § 7609 to deal specifically with a summons issued to a "third-party recordkeeper." This is a party, usually neutral with respect to the taxpayer, which is defined by inclusion in one of six listed categories: bank, consumer reporting agency, creditor, broker, attorney or accountant. § 7609(a)(3).

Section 7609 also sets forth specific procedures to be followed on the issuance of summons. The summons itself must contain the identity of the taxpayer to whom it relates, § 7609(a)(5), and notice of the summons must be given to the taxpayer within three days of its service on the third party but no later than 14 days prior to the scheduled examination date, § 7609(a)(1).

The reason for these notice requirements are the twin rights given to the taxpayer under § 7609(b)(1) and (2) to intervene in

any proceeding to enforce the summons; and to stay third-party's compliance with the summons (by notice in writing). *Id.*

To enforce the summons, the IRS, under § 7604 and § 7402, must apply to the judge of the district court "for the district within which the person so summoned resides," for an order directing compliance.

In the case at bar, it is readily noted that both parties have exercised undisputed statutory rights. The summons was issued May 29, 1979 and served by hand upon broker Jack Ryan, who by definition is a third-party recordkeeper within the meaning of § 7609. Notice was given the same day by registered mail to taxpayer's attorney. Examination was set for June 18, 1979, a date well within the notice requirements.

Taxpayer responded on May 31, 1979 by requesting Ryan not to obey the summons, pursuant to his right under the statute; taxpayer also filed a Petition to Intervene, again in accordance with the Code. It is obvious that the summons was properly issued and clearly not defective as to form. The question which must be dealt with is the taxpayer's right to block the enforcement proceeding beyond that point allowed by the Code, i. e. the right to stay compliance by calling into question the purpose for which the summons was issued. Since the core of the controversy is the enforcement of the summons, we turn now to a consideration of the respective contentions advanced as to the applicability of summary judgment and discovery.

### Summary Judgment

*United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) set the initial standards which a district court must use in judging the merits of a summons enforcement proceeding. The Court stated the IRS must meet four tests to show an administrative summons was issued in "good faith":

"that the investigation will be conducted pursuant to a legitimate purpose";

"that the inquiry may be relevant to the purpose";

"that information sought is not already within the Commissioner's possession";

"that the administrative steps required by the Code have been followed."
*Id.* at 57–58, 85 S.Ct. at 255.

The Court held that once these standards were met, the summons would be enforced "unless the taxpayer raises a substantial question that judicial enforcement of the administrative summons would be an abusive use of the court's process. . . ." *Id.* at 51, 85 S.Ct. at 251. The burden of showing that potential abuse rests on the taxpayer. However, the district court is not foreclosed from inquiry into improper purpose or harassment or lack of good faith even if the *Powell* standards are met. *Id.* at 58, 85 S.Ct. at 255.

Although *Powell* made no distinction between material sought for criminal as opposed to civil prosecution, dictum in another Supreme Court case, *Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), led some district courts to believe that summons issued for the purpose of "obtaining evidence for use in a criminal prosecution" was an improper exercise of IRS authority and an indication of institutional "bad faith." *Id.* at 449, 84 S.Ct. at 513.

In *Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), the IRS had issued a third-party summons allegedly to further an investigation whose sole purpose was to ascertain criminal rather than civil violations. *Donaldson* repudiated the *Reisman* dictum except insofar as it applied to cases where a criminal prosecution is already pending or where the investigation is clearly only focusing on criminal liability:

despite the dictum, the courts of appeal in opinions issued since *Reisman* was decided, appear uniformly to approve the use of a summons in an investigation that is likely to lead to civil liability as well as to criminal prosecution.

*Id.* at 532, 91 S.Ct. at 543.

The Court added that to hold otherwise "would thwart and defeat the appropriate investigatory powers that the Congress has placed" in the IRS. *Id.* at 533, 91 S.Ct. at 544. Further, the purpose of determining possible criminal liability was no longer im-

proper as long as the IRS had not totally abandoned its civil tax objectives.

The major good faith requirement added by *Donaldson* was that the summons for an IRS inquiry must be issued *prior* to a recommendation for criminal prosecution. *Id.* at 536, 91 S.Ct. at 545. (emphasis supplied) Later issuance would create doubt as to the nature of the IRS intentions.

*United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978) is the latest affirmation of the principles enunciated above. The Court was confronted with the same allegations it dealt with in *Donaldson* and recognized that Congress had created a law enforcement system in which criminal and civil elements are "inherently intertwined." *LaSalle* at 309, 98 S.Ct. at 2363. The decision stated that "[t]he institutional responsibility of the Service to calculate and to collect civil fraud penalties and fraudulently reported or unreported taxes is not necessarily overturned by a single agent who attempts to build a criminal case." *Id.* at 314, 98 S.Ct. at 2366. The Court believed that the several "layers of review" prior to any recommendation for criminal indictment to the Justice Department would prevent institutional "bad faith." The review process allows the IRS to keep its options open in both areas of potential liability. *Id.* at 315, 98 S.Ct. at 2366.

■ The case firmly summarizes the present standards for court review of IRS purpose:

First, *the summons must be issued before the Service recommends to the Department of Justice that a criminal prosecution,* which reasonably would relate to the subject matter of the summons, *be undertaken.* Second, the Service at all times must use the summons authority in good-faith pursuit of the congressionally authorized purposes of § 7602. This second prerequisite requires the Service to meet the *Powell* standards of good faith. *It also requires that the Service not abandon in an institutional sense . . .*

*the pursuit of civil tax determination or collection.* (emphasis supplied)
*Id.* at 318, 98 S.Ct. at 2368.

While the taxpayer contends on the instant motion that the IRS is acting in bad faith and has abandoned its civil tax pursuit in favor of a commitment to criminal prosecution, the Government has deliberately and carefully followed the "good faith" guidelines set out above.

■ First, the IRS followed the statutory mandates of the Code in issuing the summons. (See Statutory Background *supra.*) Second, Brock's affidavit states that no recommendation for criminal prosecution has yet been made to his supervisor or to the Justice Department. Brock Affidavit, p. 4, ¶ 10. Third, Brock also stated that the material is "relevant" to an ongoing investigation and that the material was not presently in IRS possession. *Id.* at 3–4. Furthermore, Brock avers that his investigation is to "determine the correct tax liability, including potential civil penalties, of the taxpayer." *Id.* at 2, ¶ 3. All these statements place the burden of proving the possibility of bad faith squarely upon the taxpayer.

As the Court acknowledged in *LaSalle,* this burden "is a heavy one" and "Because criminal and civil fraud liabilities are coterminous, the Service rarely will be found to have acted in bad faith by pursuing the former." *LaSalle* at 316, 98 S.Ct. at 2367.

■ The best that taxpayer has to offer on this point is *United States v. Chase Manhattan Bank,* 598 F.2d 321 (2d Cir. 1979), a Second Circuit decision where the Court found that taxpayer had indeed alleged facts which put the "good faith" of IRS in question. That case, however, is clearly distinguishable from the present one on its facts. There, taxpayer had several affidavits which militated against the presence of institutional fairness. In the instant case, although taxpayer claims that summary judgment is inappropriate, he is content to rest upon his unsupported allegations. He has submitted no affidavits, nothing affirmed or verified; he has not filed a Rule 9(g) statement of facts in issue

as required by the General Rules of this Court in summary judgment proceedings.

In summary then, taxpayer presents not even the weakest evidentiary matter (to say nothing of an impressive factual recital) with which to oppose the summary judgment motion. Emphatically, he has not met his burden of proving bad faith. Indeed, taxpayer does not so much contest summary judgment as he seeks to assert the applicability of some form of discovery before a "final ruling." Memorandum in Opposition, p. 9.

### Discovery

On the applicability of discovery to summary judgment proceedings, the circuits have taken the Supreme Court cases and evolved two distinct discovery rules. One allows liberal discovery and one sharply curtails it.

*Third and Fifth Circuits.* These circuits have elected to allow routine discovery in enforcement cases. The decisions there derive from the Fifth Circuit's holding in *United States v. Roundtree*, 420 F.2d 845 (5th Cir. 1969), where taxpayer attempted to depose the agent in charge of the investigation to show an illegal criminal purpose as defined by *Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964). The Court concluded that the taxpayer is entitled "to investigate the IRS' purpose where such purpose has been put in issue and may affect the legality of the summons." *Id.* at 852.

The Fifth Circuit affirmed this principle in *United States v. Wright Motor Co., Inc.*, 536 F.2d 1090 (5th Cir. 1976). There, the Court clung to whatever validity the *Reisman* dictum had, stating that *Roundtree*

established the principle that when a taxpayer alleges in a responsive pleading that the material sought by the IRS is to be used solely for a criminal prosecution, or that the IRS is engaged upon a course of personal harassment, the taxpayer is entitled to investigate the IRS' purposes through deposition of the special agent.

*Wright* at 1094.

The decision in *United States v. Genser*, 595 F.2d 146 (3rd Cir. 1979), goes even further than *Wright* in stating *minimum*

*guidelines* for discovery to aid the taxpayer in formulating an issue of fact with which to cast doubt upon the IRS' good faith:

the taxpayer should be entitled to discover the identities of the investigating agents, the date the investigation began, the dates the agent or agents filed reports recommending prosecution, the date the district chief of the Intelligence Division or Criminal Investigation Division reviewed the recommendation, the date the Office of Regional Counsel referred the matter for prosecution, and the dates of all summonses issued under 26 U.S.C. § 7602. Furthermore, the taxpayer should be entitled to discover the nature of any contacts, relating to and during the investigation, between the investigating agents and officials of the Department of Justice.

*Genser* at 152.

*Second Circuit.* This circuit's discovery rule, which controls the disposition of the present case, was first delineated in *United States v. Morgan Guaranty Trust Co.*, 572 F.2d 36 (2d Cir. 1978). The Court stated that factors such as the delay of criminal as well as civil investigation, and possible destruction of the "summary nature" of the proceedings discourage the granting of even limited discovery except where taxpayer makes a "substantial preliminary showing" of abuse. *Id.* at 42–43, n.9. It expressly repudiated the holdings in *Roundtree* and *Wright Motor, supra.*

In *United States v. Marine Midland*, 585 F.2d 36 (2d Cir. 1978), our Circuit ordered a limited discovery—disclosure through affidavit of IRS agents on how far a recommendation for criminal prosecution had proceeded. In that case, the IRS had admitted that a recommendation was being processed but did not say how far it had progressed. The discovery was addressed to this only, to determine if there was an improper purpose under the limited but still valid holding of *Reisman.*

In still another Second Circuit decision, *United States v. Chase Manhattan Bank, supra,* the Court ordered limited discovery where taxpayer used three supporting affi-

davits to raise a "good faith" question. However, the Court, citing *Marine Midland*, held the disclosure was not to be a "full-dress" discovery and trial. *Chase* at 327. Instead, it called for either "affidavits from other Government officials or . . . limited interrogatories to those who have already offered affidavits." *Id.* at 327–28.

■ It is clear that under the controlling cases in the Second Circuit, taxpayer must make a substantial showing before discovery can be granted. Under the line of cases we have here cited, it is apparent that whatever discovery is granted is usually of a limited nature.

■ In the present case, taxpayer has not made the requisite substantial showing of possible abuse. Indeed, he has not even made a limited showing. He merely asserts in general language three unverified, unsubstantiated, unsupported affirmative defenses as raising questions upon which discovery should be had.

■ As the Government correctly points out, two of these defenses are worthless. The bare assertion that an investigation is not in good faith will not, without factual support, compel this district court to grant discovery. The same disposition follows taxpayer's claim that he does not reside within the district; his records are here in the possession of the third-party recordkeeper, Ryan. This is enough to give the Court statutory jurisdiction over the proceeding.

■ Taxpayer's third affirmative defense also lacks merit. He claims that the inclusion of the Special Agent's investigation in a strike force program is tantamount to concluding that the IRS is acting as an information conduit directly to the Justice Department in the manner proscribed by *LaSalle*. He states that the "strike force" was created by "order of the Attorney General and is a creature of the Department of Justice." He further alleges that taxpayer's case "has already been referred to the Department of Justice." Petition to Intervene, pp. 1–2.

Taxpayer goes further and contends that Brock's supplemental affidavit (which denies the relationship alleged) is an attempt to avoid discovery which might resolve discrepancies between Brock's statements about the "strike force" and information published in the IRS Manual.

In ¶ 4566 *et seq.* of the IRS Manual, the Service outlines its "special enforcement" program. Coordinated by the Criminal Division of the Justice Department, the program was "designed to strike a blow at key members of the underworld." Each individual project was to be called a "strike force." The IRS would participate, with other agencies in the analysis and evaluation of organized crime activities. *Id.*

The Government argues, through Brock's Supplemental Affidavit, that the IRS' Manhattan District Strike Force Program "is an internal program of the IRS which exists exclusively within the Manhattan District of the IRS and is supervised exclusively by IRS personnel." Supplemental Affidavit of Charles C. Brock, verified November 27, 1979, p. 2, ¶ 3. More specifically, Brock states:

No representative of the Department of Justice or any agency other than the IRS, participated in the recommendation of the taxpayer for inclusion in the Program. *Other than the similarity of terminology, the Program has no relationship to any Department of Justice strike force program.* (emphasis supplied)

*Id.* at 2, ¶ 3.

Only one Second Circuit opinion we believe analyzes an enforcement proceeding involving an investigation with "strike force" participation, *United States v. Chemical Bank*, 593 F.2d 451 (2d Cir. 1979). There, an administrative summons, issued by an IRS agent, was challenged on the grounds that the presence of a "strike force" indicated that the sole, and thus, improper, purpose of the investigation was criminal prosecution. (This "strike force" was admittedly of the variety described in the Manual.)

The Court of Appeals rejected taxpayer's argument that "participation of the Service in the Strike Force makes it, without more, an information gathering agency for the Department of Justice." *Id.* at 455.

The Court extensively examined the "chain of command" within the "strike force." It found that the procedures employed by the IRS to prevent its functioning as an information conduit are safeguards enough to prevent abuse:

> The critical fact here is that the IRS is not institutionally subservient to the Department of Justice when the two participate in a Strike Force. Nor is the IRS on the scene simply to service Justice. While revenue agents are assigned to work cooperatively with the Strike Force, they remain under the control of their own superiors in the Service.

*Id.* at 456.

More importantly, the Court in *Chemical* declined even to order an evidentiary hearing (it did not reach the discovery stage), in a case where the IRS and the Justice Department were working closely together. Discovery, then, need not be ordered if the "strike force" attacked by taxpayer is strictly an internal program of the IRS.

The question of whether taxpayer's allegations on the presence of the "strike force" can stand in the way of summary enforcement must be answered in the negative. Even if the Court were to allow discovery here, it would be limited in scope and of the nature of that already provided by the IRS.*

### Conclusion

The Government's motion for summary judgment is granted. Taxpayer's subpoena of Special Agent Brock is quashed. Taxpayer's request for discovery is denied.

SO ORDERED.

---

* Brock's two affidavits in fact meet most of the minimum guidelines for discovery set out in the *Genser* decision. Under almost any discovery rule, the IRS has provided more than enough information for taxpayer's benefit.