554 F.2d 302
 77-1 USTC P 9344
 UNITED STATES of America and John F. Olivero, Special Agent
of the Internal Revenue Service, Petitioners-Appellants,
v.
LaSALLE NATIONAL BANK and Joseph W. Lang, Vice-President of
the LaSalle National Bank, Respondents-Appellees.
 No. 76-1572.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 6, 1977.
Decided April 11, 1977.
 
 Scott P. Crampton, Asst. Atty. Gen., Daniel F. Ross, Atty. Tax Div., Dept. of Justice, Washington, D. C., Samuel K. Skinner, U. S. Atty., Chicago, Ill., for petitioners-appellants.
 Matt P. Cushner, Chicago, Ill., for respondents-appellees.
 Before PELL and SPRECHER, Circuit Judges, and EAST, Senior District Judge.*
 PELL, Circuit Judge.
 
 
 1
 This is an appeal from an order of the district court entered on March 9, 1976, denying enforcement of two IRS summonses served upon the LaSalle National Bank and its vice-president, Joseph W. Lang. The issue presented is whether the district court erred in finding that the two summonses were issued in aid of an investigation solely for criminal purposes and were unenforceable for that reason.
 
 I.
 
 2
 Special Agent John F. Olivero was conducting an investigation of the federal tax liabilities of John Gattuso. On August 15, 1975, petitioner Olivero issued the instant summonses, directing the respondent LaSalle National Bank to appear before him on September 2, 1975, to testify and to produce for examination certain books, records, and papers. Respondent Lang appeared in response to the summonses but failed to testify or produce the records demanded.
 
 
 3
 On November 11, 1975, the United States and Special Agent Olivero petitioned the district court for enforcement of the summonses pursuant to 26 U.S.C. §§ 7402(b), 7604(a).[1] The petition prayed, inter alia, for an order directing the respondents to show cause why they should not comply with and obey the aforementioned summonses in each and every requirement thereof. The district court issued the order to show cause pursuant to which a hearing was held on December 5, 1975.
 
 
 4
 At the hearing, Special Agent Olivero reiterated under repeated questioning that he was attempting to determine whether or not there were any criminal violations of the Internal Revenue Code. He also testified that the purpose of his investigation was "to determine the tax liabilities for the years under investigation." In response to a direct question from the court, Olivero stated that he had not made a determination in his own mind as to whether to recommend criminal prosecution. The agent could not recall specifically reading Section 539 of the Handbook for Special Agents of the Intelligence Division, but admitted in response to another question from the court that he had not kept a chronological work sheet in connection with his investigation of the tax liability of John Gattuso. He could not recall whether he had seen any or all of the documents demanded from the respondent by the summonses.
 
 
 5
 The respondents called Olivero and Gregory J. Perry as witnesses. Respondents had served a subpoena upon Olivero seeking all files concerning or relating to Gattuso but excused the agent after the district court judge indicated that respondents had not yet sustained the burden of raising a substantial question concerning the validity of the summonses. The judge indicated that he would examine the records in camera if the respondents' presentation of their case suggested that the records should be inspected. Thereupon, the respondents called Perry, who testified that he had asked Olivero at a meeting of June 11, 1975, what civil aspect of the investigation Olivero was getting into. When Olivero said "his investigation was strictly related to criminal violations" of the Internal Revenue Code but would not disclose them, the meeting quickly came to a close. Perry testified that he asked Olivero whether there was any Revenue Agent or officer assigned to the case with him and that Olivero said "no, strictly a criminal investigation".
 
 
 6
 After hearing testimony, the court stated that it had heard nothing in Agent Olivero's testimony to suggest that the thought of a civil investigation ever crossed his mind. The judge indicated that he would undertake the in camera inspection of the materials in the file in view of his understanding that if there was a possibility that information regarding civil tax liability might come up, it was a civil investigation until Olivero closed it. The judge also observed that unless he found something in the in camera inspection that gave more support to the Government's position than did Olivero's testimony, it would be the court's conclusion that Olivero was at all times involved in a criminal investigation, at least in Olivero's mind.
 
 
 7
 After considering the in camera material, the testimony, and various memoranda submitted by the parties, the district court denied enforcement of the summonses. In its Memorandum Opinion and Order, the district court recognized that it was not an improper use of an IRS summons to issue it in aid of an investigation if the issuance was prior to a recommendation for criminal prosecution and in good faith, citing Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). The court further recognized that civil and criminal investigations might go forward side by side before a determination of the ultimate focus of the investigation was made. Again, the court recognized that the presence of a Special Agent assigned to the investigation did not automatically make it a criminal investigation. After noting that the Supreme Court in Donaldson, supra, had left no doubt that it regarded as inappropriate the issuance of an IRS summons solely for criminal purposes, the court stated:
 
 
 8
 It is apparent from the evidence that Special Agent John F. Olivero in his investigative activities had focused upon the possible criminal activities of John Gattuso, and was conducting his investigation solely for the purpose of unearthing evidence of criminal conduct by Mr. Gattuso.
 
 
 9
 Believing that the district court had either clearly erred in this finding of fact or had acted out of a mistaken view of the law, the United States filed a notice of appeal on May 7, 1976.
 
 II.
 
 10
 The first question in this case concerns our scope of review. Although the district court judge's statement that Olivero was conducting his investigation solely for the purpose of unearthing evidence of criminal conduct was not formally labelled as either a finding of fact or a conclusion of law, we think that it must be regarded as a finding of fact. The district court judge reviewed the testimony of the two witnesses, and his performance of this function must be considered that of a fact finder.
 
 
 11
 In United States v. National State Bank, 454 F.2d 1249, 1252 (7th Cir. 1972), we recognized that the rule of Donaldson v. United States, 400 U.S. 517, 536, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), validated IRS summonses when issued "in good faith and prior to a recommendation for criminal prosecution." There, the district court had granted enforcement. In affirming that judgment, we characterized the essence of the district court's decision as factual findings that the summons there challenged had been "issued in an investigation of civil liability with a possibility of criminal prosecution but with no criminal prosecution pending, and was accordingly issued in good faith." Id. We determined that "(t)he record justified the (district) court's finding of those facts." Id. Thus, this court has ruled that a finding as to good faith is a factual finding the review of which is controlled by the clearly erroneous standard of Rule 52(a), Fed.R.Civ.P.
 
 
 12
 Technically, National State Bank, supra, does not speak to the question of whether a converse determination is exactly analogous. In their main brief, the petitioners contend that a finding of sole criminal purpose is either a mixed finding of fact and conclusion of law or a finding of ultimate fact which involves the application of legal principles. The petitioners cite United States v. Weingarden, 473 F.2d 454, 460 (6th Cir. 1973), as authority for the proposition that, in either case, it is reviewable as a matter of law. In their reply brief, the petitioners shift position. Apparently guided in part by the respondents' vigorous argument that no other reported case holds that a finding such as that made in the instant case is not a finding of fact, the petitioners concede that United States v. Cleveland Trust Company, 474 F.2d 1234, 1236 (6th Cir. 1973), cert. denied sub nom. Miceli v. United States, 414 U.S. 866, 94 S.Ct. 48, 38 L.Ed.2d 118; and United States v. Zack, 521 F.2d 1366, 1369 (9th Cir. 1975), point to an opposite conclusion from that of Weingarden. The petitioners now argue that resolution of the question is a false issue in the case, inasmuch as it was quite clear that an improper legal test was applied in making a finding of sole criminal purpose.
 
 
 13
 We are not persuaded that an improper legal test was applied, and thus we cannot so simply evade the question. We hold that the clearly erroneous standard governs review of findings that an IRS summons has or has not issued in good faith. Assuming arguendo that the Supreme Court has not overruled or qualified Donaldson in its more recent adjudications, there is ample support in the record for the district court's finding of sole criminal purpose. The record establishes that Olivero testified to the existence of a civil purpose but that the district court, who observed the demeanor of the witnesses, discredited that testimony. We are not left with a firm and definite conviction that a mistake has been made.
 
 III.
 
 14
 The second question in this appeal is whether the district court applied the proper legal test in making its finding of fact. The reported cases establish that the various circuits, including our own, have formulated several distinct standards for quashing a summons issued under 26 U.S.C. § 7602.
 
 
 15
 The major problem in determining the proper legal test arises from the language of the Donaldson opinion. In the thirty-fourth paragraph of the decision, 400 U.S. at 533, 91 S.Ct. at 544, the Supreme Court stated that the dictum of Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964),[2] comes into proper focus as applicable "to the situation of a pending criminal charge or, at most, of an investigation solely for criminal purposes." However, the Donaldson opinion used different language in the thirty-eighth and last paragraph, 400 U.S. at 536, 91 S.Ct. at 545, where it stated:
 
 
 16
 We hold that under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution.
 
 
 17
 Subsequent to Donaldson, the courts of appeals have devoted considerable intellectual energy to the analysis of its language. Usually, the Government has argued that the single standard for determining the validity of an IRS summons is the "recommendation for prosecution" standard. Although some cases have appeared to accept that position, e. g., National State Bank, supra at 1252, the more recent decisions have highlighted the role of Donaldson's "good faith" language.
 
 
 18
 In Weingarden, supra, the Sixth Circuit noted that the formulation of the standard which authoring Justice Blackmun prefaced with the words "We hold" was technically dictum. 473 F.2d at 460. Accord, United States v. McCarthy, 514 F.2d 368, 374 n. 7 (3d Cir. 1975); United States v. Lafko, 520 F.2d 622, 625 n. 5 (3d Cir. 1975). See also United States v. Friedman, 532 F.2d 928, 932 (3d Cir. 1976). Thus the Weingarden court relied instead on the Donaldson paragraph relating to the Reisman dictum, ruling that "(t)he standard is whether the sole purpose of the issuance of the summons is for criminal prosecution." 473 F.2d at 460.
 
 
 19
 In United States v. Wall Corporation, 154 U.S.App.D.C. 309, 475 F.2d 893, 895 (1972), the court, after setting forth the Donaldson paragraph dealing with the Supreme Court's "holding," stated that inquiry was not ended upon a determination that prosecution had neither been instigated nor recommended. The rationale for probing beyond mere "recommendation for prosecution" was that Donaldson also required that a summons be issued "in good faith." The Wall court stated that if it could be shown that the investigating agent had already formed a firm purpose to recommend criminal prosecution, even though he had not as yet made a formal recommendation, issuance of the summons would presumably be in bad faith. 475 F.2d at 895.
 
 
 20
 In McCarthy, supra at 373-75, the Third Circuit reviewed the precedents applicable to the "criminal purpose defense" recognized in Reisman, supra, and the "good faith" defense discussed in Wall supra.[3] As to the first, it observed that the defendants had not alleged that a recommendation for criminal prosecution had been made prior to the issuance of the summons. Accordingly, it ruled that the defendants' allegations were insufficient to bring the matter on unenforceability on the grounds of criminal purpose into controversy. 514 F.2d at 374. As to the latter, it determined that the defendants' allegations sufficiently raised the possibility that the IRS agents had no intention of pursuing any civil remedies as to bring into question their good faith. Id. at 375. Accordingly, it held that the district court should conduct a hearing concerning the issues raised by the allegations of the absence of civil purpose.
 
 
 21
 More recently, the Third Circuit has apparently retreated from an effort to approach Donaldson through an analysis distinguishing its holding from its supposed dictum. In Friedman, supra, 532 F.2d at 932, the court stated that the standards for judicial enforcement of a § 7602 summons were found in Donaldson, and explained in McCarthy, supra, and even more recently, in Lafko, supra. The Friedman opinion explains that these cases recognize that the IRS has no authority to conduct a criminal investigation through the use of a § 7602 civil summons, noting that no court has given a thorough or persuasive justification for this construction. 532 F.2d at 932 n.9. The Friedman case recognizes that Donaldson and the Third Circuit cases hold that the mere fact that criminal as well as civil liability may result will not prevent judicial enforcement if (1) the Intelligence Division has not yet recommended prosecution, (2) the agent has not already formed a firm purpose to recommend prosecution, (3) the summons is not being used to harass the taxpayer, and (4) the material referred to in the summons has not already been inspected by the Government. Id. at 932.
 
 
 22
 The Friedman formulation of a four-prong basis for denying enforcement of an IRS summons represents a careful articulation of the principles gleaned from the many cases considering the validity of particular summonses. As an a priori approach, its analysis has much to recommend it. However, we can hardly fail to note that the Friedman analysis sedulously avoids any use of the phrase "in good faith," substituting instead a reformulation which sets forth the circumstances under which denial of enforcement is proper. Instead of attempting exegesis of the language of Donaldson, the Friedman case traces the contours of precedent back to the original formulation of a rationale by Judge Wyzanski in United States v. O'Connor, 118 F.Supp. 248 (D.Mass.1953).
 
 
 23
 The Ninth Circuit has taken a different approach. In United States v. Zack, supra, 521 F.2d 1366, the court reviewed a district court order denying enforcement of an IRS summons. The lower court had conducted a hearing and made a finding of fact that the investigation's sole purpose was to establish criminal liability. Upon the Government's appeal, the court followed Weingarden's ruling, 473 F.2d at 460, that an IRS summons, if issued solely for criminal purposes is not issued in good faith, even though there has been no recommendation for prosecution. Thus, Zack determined that indictment or recommendation of criminal prosecution was not a prerequisite to a finding that an investigation is solely criminal. 521 F.2d at 1368.
 
 
 24
 Significantly, Zack again found it necessary to reconcile the various passages in the Donaldson opinion. After directing attention to that portion of the opinion discussing the Reisman dictum, see 400 U.S. at 533, 91 S.Ct. 534, Zack turned to the last, "holding" paragraph. It concluded that even prior to a recommendation for criminal prosecution, an administrative summons should not be enforced unless it is issued in good faith. The court explained, supra at 1368:
 
 
 25
 We harmonize this "good faith" requirement with the language disapproving the use of the summons in "an investigation solely for criminal purposes" by concluding that the government would not be in good faith if it uses an administrative summons solely for criminal prosecution purposes. Thus, in this case, if the administrative summons was used solely for criminal purposes, it is not issued in good faith and is impermissible. This is true even though there has been no recommendation for prosecution.
 
 
 26
 In carrying out its hermeneutical task, the Zack court took no position on the characterization of the concluding Donaldson paragraph as holding or dictum.
 
 
 27
 A review of cases from other circuits establishes to our satisfaction that the Donaldson opinion has engendered some confusion. Accordingly, we shall take at face value the words of the authoring Justice and characterize the final paragraph of the opinion for the court as constituting a holding of Donaldson.[4] Thus, it is proper for a district court to grant enforcement of an IRS summons if it is issued in good faith and prior to a recommendation for criminal prosecution. Conversely, if a summons is issued in bad faith or after a recommendation for prosecution, enforcement must be denied.[5]
 
 
 28
 We agree with the respondents that the petitioners' arguments ignore the good faith requirement of Donaldson. We further agree that the real issue before the court is whether the Internal Revenue Service may issue a summons solely in aid of a criminal investigation and still meet the standard of good faith as enunciated in Donaldson. Because we are persuaded that Zack's reconciliation of the various Donaldson paragraphs accurately delineates what the Supreme Court has held, we must reject the petitioners' arguments.
 
 
 29
 The Government insists that there was no evidence that Special Agent Olivero was not simultaneously pursuing a civil investigation. Reading the record evidence in this fashion, the petitioners submit that it is clear that the special agent's investigation encompassed the purpose of determining the taxpayer's tax liability. Suggesting that the district court misfocused its inquiry, the petitioners insist that the only relevant inquiry is whether the investigation in aid of which the summons is issued is directed at least in part toward determining the liability of some person for an internal revenue tax.[6] The Government argues that once it is demonstrated that there is nothing unusual or sinister about the special agent focusing his attention on the criminal aspects of the case, the finding of sole criminal purpose must fall.
 
 
 30
 We think that the Government oversimplifies the evidentiary posture of the case. Special Agent Olivero testified that he was pursuing a civil aspect, but the record establishes that the district court did not believe him.
 
 
 31
 We note that the district court expressly observed that the bona fides of the investigation was in issue. The Government attempts to use the district court's statement as an indication that it applied the wrong legal test. Our reading of the reported cases persuades us that the use of an administrative summons solely for criminal purposes is a quintessential example of bad faith. In view of our reading of the crucial language in Donaldson, see 400 U.S. at 536, 91 S.Ct. 534, we read the statement as a faithful reflection of that decision's alternative holding.
 
 
 32
 We have examined subsequent Supreme Court decisions, such as Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); Beckwith v. United States, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); and Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Although those cases establish that a taxpayer is clearly the "focus" of aicriminal investigation when the matter is assigned to the Intelligence Division of the Internal Revenue Service, they do not reflect in our reading of them any intent of the Supreme Court to qualify or cut back its holding in Donaldson, supra, 400 U.S. at 536, 91 S.Ct. 534. Accordingly, the "bad faith" test spelled out by that decision is controlling law.
 
 
 33
 We note that the district court formulated its factual finding by use of the expression "sole criminal purpose" rather than by a label such as "bad faith." We find no basis for reversible error in that verbal formulation. The district court grasped the vital core of Donaldson and rendered its factual finding consistently therewith. Accordingly, its order denying enforcement of the two IRS summonses is
 
 
 34
 Affirmed.
 
 
 
 *
 Senior District Judge William G. East of the United States District Court for the District of Oregon is sitting by designation
 
 
 [1]
 26 U.S.C. § 7402(b) provides:
 If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.
 26 U.S.C. § 7604(a) provides:
 If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which said person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.
 
 
 [2]
 The Donaldson opinion, 400 U.S. at 532, 91 S.Ct. at 543, identified the following passage from Reisman, supra, 375 U.S. at 449, 84 S.Ct. 508, as dictum, referring to it thereafter as "the Reisman dictum":
 (T)he witness may challenge the summons on any appropriate ground. This would include, as the circuits have held, the defenses that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution, Boren v. Tucker (9 Cir.), 239 F.2d 767, 772-773, as well as that it is protected by the attorney-client privilege. . . .
 
 
 [3]
 McCarthy declined to follow Weingarden, supra, which it read as holding that Donaldson could be read as promoting the "solely for criminal purposes" test and not the "recommendation for prosecution" test. At the same time, however, McCarthy stated that the portion of the Donaldson opinion found in the last paragraph of Justice Blackmun's opinion for the court was, technically speaking, mere dictum. See 514 F.2d at 374 n. 7
 
 
 [4]
 The courts have characterized the final paragraph as mere dictum because the Supreme Court did not have to rule on the sufficiency of the taxpayer's claims, one of which was the criminal purposes defense. See, e. g., McCarthy, supra, 514 F.2d at 374 n. 7. However, the Supreme Court was perfectly aware that its holding that the taxpayer's interest was not of sufficient magnitude to support intervention effectively disposed of the case. In Donaldson, supra, 400 U.S. at 531, 91 S.Ct. at 543, the authoring Justice states, prior to Part VII's resolution of Donaldson's arguments, that "(t)his conclusion (i. e., insufficient interest to support intervention) could dispose of the case, for our main concern here is with the taxpayer's asserted right to intervention in the particular enforcement proceedings." (Emphasis supplied.) That the Court went on to examine its Reisman dictum appears to us an intentional formulation of an alternative holding
 
 
 [5]
 Although our prior cases of United States v. Turner, 480 F.2d 272 (7th Cir. 1973); and United States v. Awerkamp, 497 F.2d 832 (7th Cir. 1974), use different phraseology, they are consistent with this interpretation of Donaldson
 
 
 [6]
 In their main brief, the petitioners state that "(i)t is the government's position that a summons may be used solely for the purpose of criminal investigation at any time prior to the final recommendation for criminal prosecution." They found it unnecessary to advance the argument because of their view that the evidence in this case clearly established that the special agent's investigation encompassed a civil aspect