**UNITED STATES of America, Petitioner-Appellee,**

v.

**MORGAN GUARANTY TRUST COMPANY, Respondent,**

**and**

**Roger L. Keech and Sandra J. Keech, Intervenors-Appellants.**

**No. 622, Docket 77–6191.**

United States Court of Appeals, Second Circuit.

Argued Jan. 11, 1978.

Decided Feb. 6, 1978.

---

Louis Bender, New York City (Sandor Frankel and Bender & Frankel, New York City, of counsel), for intervenors-appellants.

Gaines Gwathmey, III, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., for the Southern District of New York, and William G. Ballaine, Asst. U. S. Atty., New York City, of counsel), for petitioner-appellee.

Before FRIENDLY and VAN GRAAF-EILAND, Circuit Judges, and DOOLING, Senior District Judge.*

FRIENDLY, Circuit Judge:

The United States filed a petition in the District Court for the Southern District of New York under I.R.C. §§ 7402(b) and 7604(a), to enforce a summons issued under the authority of the Secretary of the Treasury pursuant to I.R.C. § 7602.[1] The petition was supported by an affidavit of I.R.S. Special Agent Alexander Dombroski, who had issued the summons. The summons had directed Morgan Guaranty Trust Company

to appear before Special Agent A. Dombroski, an officer of the Internal Revenue Service, to give testimony relating to the tax liability or the collection of the tax liability of the person identified above for the periods shown and to bring with you and produce for examination the following books, records, papers and other data:

---

* Of the United States District Court for the Eastern District of New York, sitting by designation.

1. This provides:

> § 7602. Examination of books and witnesses
> For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized—
> (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
> (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
> (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.
> Aug. 16, 1954, c. 736, 68A Stat. 901; Oct. 4, 1976, Pub.L. 94–455, Title XIX, § 1906(b)(13)(A), 90 Stat. 1834.

Signature card, ledger sheets, or transcripts of accounts for any and all savings, or checking accounts and Certificates of Deposits in the names of Roger L. and/or Sandra J. Keech covering the period 1972 through 1975. Also, any records, to include application and record of repayments relating to loans, mortgages and letters of credit.

Mr. and Mrs. Keech (the taxpayers) were notified of the issuance of the summons and directed the bank not to comply. Exercising the right given them by I.R.C. § 7609(b), added by the Tax Reform Act of 1976, they intervened and stayed compliance with the summons.[2]

Taxpayers submitted an opposing affidavit of counsel, alleging that the summons was not issued "in good faith, in that said summons was issued solely in aid of a criminal investigation of the taxpayers." They contended that such a summons is "improper, unauthorized and unenforceable."

This claim is rested on three factual bases:

(1) The summons was issued by a Special Agent assigned to the Intelligence Division of the IRS, the function of which is the enforcement of criminal statutes relating to taxes; the Special Agent had issued eleven other summonses during the course of his investigation.

(2) The Special Agent had allegedly stated that he was conducting a "criminal investigation of Roger Keech."

(3) The summons stated that the investigation related to the four-year period 1972–75 but the taxpayers had been previously audited for 1972 and 1974 and these audits had been completed with a determination of no additional tax due.

For proof of the statement mentioned in (2), taxpayers relied on an affidavit of William G. Woolridge, a tax accountant in the employ of Chromalloy American Corporation (Chromalloy). Woolridge stated that on August 15, 1971, he had been present at the office of Arrow Group Industries, Inc. (Arrow), a Chromalloy subsidiary of which Roger Keech was president, and met with IRS agents including Special Agent Dombroski, who were conducting an audit of Arrow. As Dombroski left the Arrow premises with Arrow records he had previously requested in connection with his investigation of Keech, an unnamed Arrow employee asked whether production of the records cleared up everything as between Dombroski and Arrow. Allegedly Dombroski "responded in the affirmative and further stated, in substance, that his only remaining interest was in his criminal investigation of Roger Keech." Taxpayers asked that the Government's enforcement petition should be dismissed or, in the alternative, that an evidentiary hearing be held to determine whether the summons was issued solely in aid of a criminal investigation, with discovery to precede this.

The Government countered with a supplemental affidavit of Dombroski and an affidavit of Charles Lazarus, an IRS agent in the Audit Division, which handles civil enforcement. Dombroski stated that in February, 1977, he had been assigned to the investigation of the 1973, 1974 and 1975 returns of the taxpayers jointly with the Audit Division; that the investigation had not yet progressed sufficiently to warrant a decision whether or not to recommend criminal prosecution; and that if he determined not to recommend this, the Audit Division would decide whether there were liabilities for additional taxes and civil fraud penalties. He admitted he had told an Arrow employee, Theodore Beindorf, that he regarded Arrow as having satisfied the sum-

2. The quid pro quo for this newly accorded statutory right is § 7609(e). This provides:

(e) Suspension of statute of limitations.—If any person takes any action as provided in subsection (b) and such person is the person with respect to whose liability the summons is issued (or is the agent, nominee, or other person acting under the direction or control of such person), then the running of any period of limitations under section 6501 (relating to the assessment and collection of tax) or under section 6531 (relating to criminal prosecutions) with respect to such person shall be suspended for the period during which a proceeding, and appeals therein, with respect to the enforcement of such summons is pending.

mons issued to it but that his investigation of Mr. Keech was ongoing. He denied having used the word "criminal" although conceding that "in point of fact the joint investigation is criminal as well as civil in nature." With respect to the third point in counsel's affidavit, he noted that he was only investigating the Keech's 1973, 1974 and 1975 returns,[3] and that, in accordance with I.R.C. § 7605(b), the IRS had notified taxpayers that further information made it necessary to reexamine their books and records for 1974. He thus failed to understand the relevance of counsel's reference to the previous audit. Lazarus affirmed the Audit Division's participation in the joint investigation. He then stated that he was familiar with the file and that it contained

> a) no determination of whether there exists unreported income attributable to the taxpayer for the years in question; b) no determination to recommend criminal prosecution of either Sandra J. Keech or Roger L. Keech and c) no determination of whether grounds exist to institute a civil action seeking to recover additional taxes and/or fraud penalties under the Internal Revenue Code.

and that

> The bank records sought by the IRS summons issued to respondent may be necessary to determine all these issues.

His affidavit concluded with a paragraph which we quote in the margin.[4]

The taxpayers submitted no further affidavits. After hearing argument Judge Carter granted the Government's petition and taxpayers appealed. Meanwhile enforcement has been stayed.

**3.** The Government has disclaimed any request for enforcement of the summons in regard to the tax year 1972.

**4.** Given the present status of the joint investigation, there are two potential future dispositions. First, Special Agent Dombroski could decide to recommend prosecution, in which event my function would be to submit a Revenue Agent's Report stating the Audit Division's computation of any taxes due. This report would end my involvement in the matter at least until disposition of the criminal aspect of the investigation. Second, Special Agent Dombroski could determine that

## DISCUSSION

The question how far a summons issued under I.R.C. § 7602 is open to attack because of its relation to a criminal prosecution has been much litigated in recent years. Since we hopefully will receive further enlightenment on the subject as a result of the grant of certiorari, 434 U.S. 996, 98 S.Ct. 632, 54 L.Ed.2d 489 (1977), to review *United States v. LaSalle National Bank*, 554 F.2d 302 (7 Cir. 1977), a summary of the doctrinal history will suffice.

There is nothing on the face of the statute, see note 1 *supra*, which prevents its utilization in aid of an investigation with a potential for criminal rather than merely civil prosecution of a taxpayer. Indeed, in its latest decision on the subject, the Supreme Court seems to us to have so declared, *Donaldson v. United States*, 400 U.S. 517, 535, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). Current dubieties have their origin in a dictum in *Reisman v. Caplin*, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964), where, in upholding the denial of injunctive and declaratory relief to a taxpayer's attorneys in a suit against the Commissioner of Internal Revenue and an accounting firm with respect to reports produced by the latter at the attorneys' request for use in civil and criminal litigation against the taxpayer, the Court said:

> Furthermore, we hold that in any of these procedures before either the district judge or United States Commissioner, the witness may challenge the summons on

the facts disclosed by the joint investigation did not warrant the recommendation of a criminal prosecution, in which event he would issue a Discontinued Investigation Report. After the issuance of such a report, the matter would be returned to the Audit Division and to me for a determination of whether to recommend an assessment for additional taxes and/or seek civil fraud penalties. To reiterate, Special Agent Dombroski has informed me that the joint investigation has not developed sufficiently to warrant a decision by him on either of the options discussed in this paragraph.

any appropriate ground. This would include, as the circuits have held, the defenses that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution, *Boren v. Tucker,* 9 Cir., 239 F.2d 767, 772–773, as well as that it is protected by the attorney-client privilege, *Sale v. United States,* 8 Cir., 228 F.2d 682.

If *Boren v. Tucker* constituted the limit of what the Court had in mind, the restriction placed on I.R.C. § 7602 would not be very great. There the court of appeals, after having propounded the question whether use of the word "correctness" in § 7602 would "prevent examination [of a taxpayer's records] for purpose[s] of securing evidence for a criminal prosecution?", answered in the negative. Referring to what the court characterized as the taxpayer's "only authority on this aspect of his position," *United States v. O'Connor,* 118 F.Supp. 248, 250 (D.Mass.1953), the opinion correctly characterized Judge Wyzanski's opinion in that case as holding only that the predecessor to § 7602 "did not authorize an agent to issue a subpoena, merely to aid the prosecution of a *pending* criminal action by the Department of Justice." *Boren v. Tucker, supra,* 239 F.2d at 772 (emphasis in original).[5]

The argument for a restrictive reading of § 7602 was not advanced by *United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). Although Mr. Justice Harlan declared that a court may not permit its process in enforcing a summons to be abused, his examples of "abuse" were:

> Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation.

Nothing was said to indicate that an intention by the Commissioner to uncover criminal tax liability would reflect "on the good faith" of the inquiry, and the rule of *ejusdem generis* would dictate the contrary.

This was the background against which the Court decided *Donaldson v. United States, supra,* 400 U.S. 517, 532–36, 91 S.Ct. 534, 27 L.Ed.2d 580, a case which like this involved the enforcement of a third party summons issued by a Special Agent. The Court referred to the dictum in *Reisman v. Caplin;* to subsequent decisions of courts of appeals approving "the use of a summons in an investigation that is likely to lead to civil liability as well as to criminal prosecution" or "even where it is alleged that its purpose is to uncover crime, if no criminal prosecution as yet has been instituted"; and to other decisions holding that "where the sole objective of the investigation is to obtain evidence for use in a criminal prosecution, the purpose is not a legitimate one and enforcement may be denied." After giving as an instance of this "the case where a criminal prosecution has been instituted and is pending at the time of issuance of the summons," the Court said, 400 U.S. at 533, 91 S.Ct. at 543:

> It is precisely the latter situation— where the sole object of the investigation is to gather data for criminal prosecution—that is the subject of the *Reisman* dictum. This is evident from the fact that the dictum itself embraces the citation of *Boren v. Tucker,* 239 F.2d 767, 772–773 (C.A.9 1956), an opinion in which, at the pages cited, the Ninth Circuit very carefully distinguished *United States v. O'Connor,* 118 F.Supp. 248 (Mass.1953), a case where the taxpayer already was under indictment. The *Reisman* dictum is to be read in the light of its citation of *Boren,* and of *Boren's* own citation of *O'Connor;* when so read, the dictum comes into proper focus as applicable to the situation of a pending criminal charge or, at most, of an investigation solely for criminal purposes.

The Court then went on to point out that Donaldson was not under indictment; that

---

5. The court of appeals listed five factors which were present in *O'Connor* but were absent both in *Boren* and here, 239 F.2d at 772.

no recommendation had been made for his prosecution; that whether he ever would be prosecuted would depend on the result of the audit; and that, as noted above, there is nothing in § 7602 restricting "use of the summons for investigation into criminal conduct." [6] The opinion concluded, 400 U.S. at 536, 91 S.Ct. at 544:

> We hold that under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution.

Other courts of appeals have subjected the *Donaldson* opinion to lengthy textual exegesis reminiscent of scholastic philosophers or Talmudists. The results are summarized in Judge Pell's opinion for the Seventh Circuit in the *LaSalle National Bank* case, *supra,* 554 F.2d at 302, now before the Court on certiorari. In particular the two passages quoted have been thought to be in contradiction, or at least to be so unless the words "issued in good faith" in what the Court characterized as its holding are read to encompass investigations for the sole purpose of finding a basis for criminal prosecution rather than what Mr. Justice Harlan seems to have meant when he used those words in *Powell.* Courts taking this view have held that a warrant issued in an investigation "solely for criminal purposes" is not "issued in good faith" and "is imper-missible . . . even though there has been no recommendation for prosecution." *United States v. Zack,* 521 F.2d 1366, 1368 (9 Cir. 1975). See, e. g., *United States v. LaSalle National Bank, supra,* 554 F.2d at 308–09. The Government, by contrast, argues that a summons is valid as long as criminal prosecution has not been recommended by the IRS to the Department of Justice. Br. at 10.[7]

If there were not good grounds for hope that the Supreme Court itself will soon clear away the underbrush, we would be inclined to reconcile the disparity between the quoted passages, if such there be,[8] on the basis that the stated holding, rather than the passage on 400 U.S. p. 533, 91 S.Ct. 534, was the real holding; that, so far as concerned use of a third party summons for criminal investigations, the Court was laying down an objective test, "prior to a recommendation for criminal prosecution," that would avoid a need for determining the thought processes of special agents; and that the "good faith" requirement of the holding related to such wholly different matters as those mentioned in *Powell.* This seems to us to be the thrust of the opinion when it is read as a whole, particularly the discussion of the broad availability of the summons for criminal investigations, 400 U.S. at 535–36, 91 S.Ct. 534. Such a view would also be consistent with the only ra-

---

**6.** The Court also stated:

> Congress clearly has authorized the use of the summons in investigating what may prove to be criminal conduct. . . .
> There is no statutory suggestion for any meaningful line of distinction, for civil as compared with criminal purposes, at the point of a special agent's appearance. To draw a line where a special agent appears would require the Service, in a situation of suspected but undetermined fraud, to forgo either the use of the summons or the potentiality of an ultimate recommendation for prosecution. We refuse to draw that line and thus to stultify enforcement of federal law.

400 U.S. at 535–36, 91 S.Ct. at 544–45 (citations omitted).

**7.** The issue has not been decided in this circuit. In *United States v. Asphalt Materials, Inc.,* 77–1 U.S.T.C. 86,189 (W.D.N.Y.1976), *aff'd by order,* 559 F.2d 1205 (2 Cir. 1977), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190, 46 U.S.L.W. 3262 (1977), the district court apparently adopted the "sole purpose" test advanced by the taxpayers here, and in particular the "already formed a firm purpose to recommend prosecution" variant. However, the district court also found that the taxpayers had not shown that the sole purpose of the summons was for a criminal investigation and the appeal was by the taxpayer from that finding. See also Second Circuit Rules § 0.23.

**8.** The disparity would disappear if the passage on 400 U.S. p. 533, 91 S.Ct. 534 is read as characterizing the holdings of the courts of appeals rather than as approving all of them, particularly the "sole purpose" cases. The Court had preceded its reference to the latter cases by the cautionary phrase "it has been said." Also in view of the use of the phrase "at most," the Court can hardly have meant to give unqualified approval to the *Reisman* dictum.

tionale that has ever been offered for preventing an otherwise legitimate use of an Internal Revenue Service third party summons, namely that Congress could not have intended the statute to trench on the power of the grand jury or to broaden the Government's right to discovery in a criminal case, see *United States v. O'Connor, supra,* 118 F.Supp. at 250–51. Such considerations are scarcely applicable when no responsible government official has yet made any determination with respect to the propriety of a prosecution.

However, so far as this case is concerned, we find no necessity for making such a decision for the period until the Court speaks again. Even if we were to subscribe to the reading given *Donaldson* by *LaSalle National Bank* and other cases, petitioners made no showing sufficient to call for an evidentiary hearing or discovery on whether the summons was to be used solely to develop evidence for prosecution.

We start from the premise that investigations of taxpayers that would develop evidence of criminal but not of civil tax liability must be rare; indeed, petitioners have pointed to none. To be sure, a taxpayer can violate I.R.C. § 7206(1) or the misdemeanor section, § 7207, by making a wilfully false statement even though no further tax is due. See *United States v. Tsanas,* 2 Cir., 1978, 572 F.2d 340, 342–344. *Prima facie,* however, when the Audit Division and the Intelligence Division cooperate in an investigation, their interest is in establishing a deficiency which may be the basis for a civil recovery, with or without fraud penalties, a criminal prosecution, or both. Both Special Agent Dombroski and Agent Lazarus swore that this was the case here.

Thus, the involvement of the Special Agent in the investigation (as was also the case in *Donaldson*) in no way detracts from the conclusion that the investigation served both criminal and civil purposes. All that was brought up against this was Woolridge's affidavit that the Special Agent had said to an Arrow employee, unnamed by him but named by Dombroski, that, after getting the additional records from Arrow "his [Dombroski's] only remaining interest was in his criminal investigation of Roger Keech." Even assuming that Dombroski had in fact said this, which he denied, it would prove nothing that would justify rejection of the Government's petition. While under IRS procedures Dombroski's own interest was in determining whether he should recommend a prosecution, neither the making of such a recommendation nor the failure to make one would lessen the IRS' appropriate interest in determining whether the taxpayers were liable for deficiencies and penalties. Finally, we find Dombroski's answer to the taxpayers' third argument more than sufficient. The IRS is interested in only one year for which the Keeches have been previously audited, and as to that year the taxpayers, pursuant to statute, have been advised of the Service's need to reexamine their records to redetermine their tax liability. The mere need to reexamine previously audited books provides no evidence that solely criminal prosecution is intended. Even under the broadest reading of *Donaldson* as to the meaning of the phrase "issued in good faith," a taxpayer must show something more than was done here in order to be entitled to discovery [9] and an evidentiary hearing.

9. Citing *Powell, supra,* 379 U.S. at 58, n. 18, 85 S.Ct. 248 and F.R.C.P. 81(a)(3), the taxpayers note that the Federal Rules of Civil Procedure apply to IRS summons enforcement proceedings. They therefore conclude that "at some stage prior to the District Court's ruling . . . discovery should . . . have been allowed," and cite a number of cases in which courts have ordered various degrees of discovery. *E. g., United States v. Roundtree,* 420 F.2d 845 (5 Cir. 1970) (deposition of IRS agent); *United States v. McCarthy,* 514 F.2d 368 (3 Cir. 1976) (evidentiary hearing to determine wheth-

er a summons was issued in good faith); *United States v. Wright Motor Co.,* 536 F.2d 1090 (5 Cir. 1976) (limited deposition of Special Agent).

However, F.R.C.P. 81(a)(3) contains the caveat: "except as otherwise provided by . . . rules of the district court or by order of the court in the proceedings." The 1946 Report of the Advisory Committee on Rules of Civil Procedure, commenting on F.R.C.P. 81(a)(3), stated:

The provision allows full recognition of the fact that the rigid application of the rules in the proceedings themselves may conflict with

The order of the district court is affirmed. The stay of enforcement of the summons is extended for fourteen days from the filing of this opinion and if, within that period, an application for a further stay pending a petition for certiorari is filed with the Supreme Court, until such application is determined.

the summary determination desired. . . . [I]t is drawn so as to permit application of any of the rules in the proceedings whenever the district court deems them helpful.
3 Legislative History of Rules of Civil Procedure 161 (1947 Amendments). The decision of the district court to deny discovery in this case constitutes an exercise of discretion which even the taxpayers' cases recognize should not be reversed unless discretion was abused. See *United States v. Wright Motors Co.*, 536 F.2d at 1093–94. The Supreme Court also recognized in *Donaldson, supra,* 400 U.S. at 528–29, 91 S.Ct. 534, that an application of the Rules which would destroy the summary nature of enforcement proceedings is not required. The specific discovery sought by the Keeches illustrates the drastic impact on IRS's investigations that the granting of such requests would create. Taxpayers asked that the court "order the IRS agents involved in this investigation to appear for depositions by the taxpayers' counsel prior to the hearing, with all books, records, reports, memoranda, and other documents relative to the issue of the purpose for the issuance of the summons and the nature of the investigation of the taxpayers." Intervenors' Memorandum of Law at 13. Such discovery would seriously delay not only criminal but civil investigation. See *United States v. Salter,* 432 F.2d 697, 700 (1 Cir. 1970). When these policy considerations are coupled with the Supreme Court's statement in *Powell,* 397 U.S. at 58, 85 S.Ct. at 255, repeated in *Donaldson,* 400 U.S. at 527, 91 S.Ct. [534] at 540 that "the burden of showing an abuse of the Court's process is on the taxpayer," it is thus clear that the taxpayer must make a substantial preliminary showing before even limited discovery need be ordered. Compare *United States v. Newman,* 441 F.2d 165, 169 (5 Cir. 1971) (". . . the summoned party must raise in a substantial way the existence of substantial deficiencies in the summons proceedings. Only when so raised, is there any need for an evidentiary hearing or— in anticipation of it—the traditional discovery mechanisms . . . with appropriate limitations."), with *United States v. Wright Motors, supra,* 536 F.2d at 1094.