UNITED STATES of America and Joseph McGrath, Special Agent, Internal Revenue Service, Petitioners-Appellees,

v.

O'HENRY'S FILM WORKS, INC., and Henry Pergament, as President of O'Henry's Film Works, Inc., Respondents-Appellants.

No. 473, Docket 78-6124.

United States Court of Appeals, Second Circuit.

Argued Jan. 26, 1979.

Decided April 16, 1979.

John J. Tigue, Jr., New York City (Stuart E. Abrams, Kostelanetz & Ritholz, New York City, of counsel), for respondents-appellants.

William G. Ballaine, Asst. U.S. Atty., S.D. N.Y., Robert B. Fiske, Jr., U.S. Atty., Peter C. Salerno, Asst. U.S. Atty., New York City, of counsel), for petitioners-appellees.

Before FEINBERG and MESKILL, Circuit Judges, and EDELSTEIN, District Judge.*

EDELSTEIN, District Judge:

This is an appeal by O'Henry's Film Works, Inc., and Henry Pergament, as president of O'Henry's Film Works, Inc., from an order of the United States District Court for the Southern District of New York, directing that Pergament comply with a portion of an Internal Revenue Service summons, issued pursuant to 26 U.S.C. § 7602, by answering questions concerning the whereabouts of certain corporate records of O'Henry's Film Works, Inc. The basis for the order was an earlier finding by the district court that certain statements in an affidavit by Pergament constituted a waiver of his Fifth Amendment privilege against self-incrimination. For reasons set forth below, we hold that no waiver occurred and accordingly reverse.

I

In March 1976, an Internal Revenue Service (IRS) summons was served on Pergament as president of O'Henry's Film Works, Inc. (O'Henry's), which called upon him to produce certain corporate documents of O'Henry's and to give testimony in connection with an IRS investigation of the corporation's tax liability for fiscal years 1973,

1974, and 1975. On the return date of the summons, the corporation made available some of the documents demanded, but did not produce cash register tapes and cash register reconciliation statements called for by the summons. When Pergament appeared in response to the summons, he declined to answer any substantive questions asked by an IRS Special Agent, and claimed his Fifth Amendment privilege against self-incrimination.

A second IRS summons was served on Pergament as president of O'Henry's, in July 1976. It called for his testimony and for production of the cash register tapes and reconciliation statements that had not been produced in response to the previous summons. No such records were produced. When Pergament appeared in response to the summons on August 2, 1976, he again refused to answer any substantive questions on the ground that his answers might tend to incriminate him. Pergament's attorney stated that "[w]e have produced everything we can in response to this summons, and that is nothing," and made similar statements to the same effect.[1]

Nine months after Pergament's second appearance before IRS agents, in May 1977, Petitioners by order to show cause instituted a summary proceeding pursuant to 26 U.S.C. §§ 7402, 7604 to compel compliance with the second summons. An IRS Special Agent submitted an affidavit in support of the application stating his factual basis for believing the tapes still existed. Pergament submitted an affidavit in opposition to the application which, in relevant part, adopted his attorney's statements made on August 2, 1976, and stated further:

I am not now, nor was I at the time I was served with the summons in question, in possession or in control of the documents called for in the summons. The same is and was true of O'Henry's Film Works, Inc. Moreover, I reaffirm that I respectfully decline on the advice of counsel to

---

* The Honorable David N. Edelstein, Chief Judge, U.S. District Court for the Southern District of New York, sitting by designation.

1. Pergament's attorney also stated: "we have, so that the record will be clear, no records to produce in a response to this summons"; and "I am saying we cannot produce anything in response to this summons."

answer any further questions concerning these documents on the ground that the answers to such questions may tend to incriminate me.

By memorandum and order filed October 18, 1977, the district court found that Pergament had waived his Fifth Amendment privilege by filing the affidavit described above. However, on the issue of enforcement of the summons to produce records, the district court found that the IRS had not adequately established the existence of the records sought and therefore denied Petitioners' application without prejudice. The court stated that if the IRS could establish, through testimony of Pergament or other evidence, the existence of the records and Pergament's possession of them, the court would enforce the summons. Respondents' motion to reargue the question of waiver was denied by memorandum endorsement filed November 10, 1977.

Pergament then was requested to appear to testify regarding the whereabouts of the cash register records by an Assistant United States Attorney. Pergament's attorney declined to produce Pergament unless a new IRS summons were issued. On April 27, 1978, Petitioners moved for an order directing Pergament to appear and answer questions about the tapes. The district court granted the motion by memorandum endorsement filed June 9, 1978, stating that its earlier memorandum and order of October 18, 1977, had denied enforcement only of the portion of the summons that called for production of documents, and that the portion of the summons that called for Pergament's testimony remained enforceable. Therefore, by order of July 5, 1978, the district court ordered Pergament to "respond to appropriate questions including ones concerning the whereabouts of the documents described in the summons," but stayed enforcement of the order pending this appeal.

■ The district court's order enforcing the IRS summons is appealable as a final order. *Reisman v. Caplin,* 375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964); 9 Moore's Federal Practice ¶ 110.13[2](2) (2d

ed. 1975). Therefore, this court has jurisdiction.

O'Henry's and Pergament raise three issues on appeal: first, that Pergament did not waive his Fifth Amendment privilege against self-incrimination; second, that the district court lacked jurisdiction to enter its order of July 5, 1978 because of its earlier denial of enforcement of the same summons; and third, that the district court erred in not making a finding on the issue of the institutional good faith of the IRS's actions, and that further discovery is necessary on that issue, under *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). We agree no waiver occurred, but reject the other grounds of appeal.

## II

■ It is well settled that the Fifth Amendment privilege against self-incrimination does not extend to corporations and similar organizations. An agent of such an organization has a duty to produce the organization's records, even where the records might incriminate the corporation or the agent, if a valid summons or subpoena has issued for those records. *Wilson v. United States,* 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911) (corporations); *United States v. White,* 322 U.S. 694, 701, 64 S.Ct. 1248, 1252, 88 L.Ed. 1542 (1944) (any organization, such as a labor union, that "has a character so impersonal . . . that it cannot be said to embody or represent the purely private or personal interests of its constituents, but rather to embody their common or group interests only"); *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974) (small law partnership); *United States v. Shlom,* 420 F.2d 263 (2d Cir. 1969), *cert. denied,* 397 U.S. 1074, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970) (single-stockholder corporation); *United States v. Richardson,* 469 F.2d 349 (10th Cir. 1972) ("Subchapter S" corporation).

■ It is also well settled that an agent of an organization retains a personal privilege against self-incrimination. *Curcio*

*v. United States,* 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957); *Wilson v. United States,* 221 U.S. 361, 385, 31 S.Ct. 538, 55 L.Ed. 711 (1911). Even a routine tax investigation is a situation in which answers to questions by an IRS agent might tend to incriminate, and thus Fifth Amendment rights apply to such answers. *See Mathis v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968); *United States v. Patterson,* 219 F.2d 659, 661 (2d Cir. 1955). Of course, the Fifth Amendment protects a witness such as Pergament[2] only if it is raised in timely fashion. A witness who fails to invoke the Fifth Amendment against questions as to which he could have claimed it is deemed to have waived his privilege respecting all questions on the same subject matter. *See Rogers v. United States,* 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951).

The question whether Pergament made such a waiver depends upon whether his duty as an agent of a corporation rendered unprivileged, and therefore compulsory under valid process, certain statements he made when he failed to produce corporate records. If Pergament, as president of O'Henry's, was compelled at the time Petitioners applied to enforce the summons to state that he was not in possession of the cash register tapes and reconciliation statements called for, then the statement in his affidavit could not have been avoided by a claim of privilege, and no Fifth Amendment waiver occurred. If, on the other hand, Pergament was free to say nothing in response to Petitioners' application, then the statement in his affidavit might be deemed

a voluntary waiver of his Fifth Amendment privilege.[3] A resolution of this issue must begin with an examination of two United States Supreme Court cases, *Curcio v. United States,* 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957), and *McPhaul v. United States,* 364 U.S. 372, 81 S.Ct. 138, 5 L.Ed.2d 136 (1960).

*Curcio v. United States, supra,* reversed a contempt conviction of a union official who had refused to answer questions regarding the whereabouts of union records he had failed to produce to a grand jury. Joseph Curcio, secretary-treasurer of a union local, had testified "that the union had books and records; but that they were not then in his possession." 354 U.S. at 119, 77 S.Ct. at 1147. He then refused to answer any further questions about the whereabouts of the records, on the ground that his answers might tend to incriminate him.[4] A unanimous Court held that Curcio could not be compelled to testify regarding the whereabouts of corporate books and records because such testimony might lead to a criminal conviction. Although Curcio had stated that the records were not in his possession, the Court did not even consider whether that statement constituted a waiver of his Fifth Amendment privilege.

*McPhaul v. United States, supra,* upheld a contempt conviction against the putative executive secretary of an organization who had refused to answer any questions whatsoever regarding possession or custody of organizational records called for by a Congressional subpoena. McPhaul did not produce the records called for, then refused to answer even a question whether he was

---

2. Different procedural rules might apply to a witness under other circumstances. For example, if a witness is "in custody" and unaccompanied by counsel, IRS agents would be required to follow the procedures set out in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Mathis v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968).

3. However, as discussed at pages 318–319, *infra,* even if Pergament's statement were voluntary it should not necessarily be deemed a waiver in the face of his broad and unequivocal assertions of his Fifth Amendment privilege.

4. Among questions asked were:

"Mr. Curcio, have you ever had possession of the books and records of this local? . . . ."

"Did you have custody and control of these records last Thursday? . . . ."
"Where are any of those records today, if you know? . . . ."
"Who has any of those records today, if you know? . . . ."
"Where were any or all of these records a week ago last Monday? . . . ." 354 U.S. at 120 n. 1, 77 S.Ct. at 1147.

refusing to comply with the subpoena.[5] At no point in the Congressional hearing, nor in proceedings before any court, did McPhaul claim that the records called for did not exist or were not in his possession. 364 U.S. at 378, 81 S.Ct. 138. Although McPhaul could not have been convicted of contempt if he had satisfied the Court that he did not possess the records, his failure to make any statement regarding his nonproduction of the records led to his conviction. As to whether any statement by McPhaul would have been a waiver of his Fifth Amendment privilege, the Court stated: "[T]here is no merit in petitioner's argument that he could not have advised the Subcommittee that he was unable to produce the records without thereby inviting other questions respecting the records and thus risking waiver of his privilege against self-incrimination. *See Curcio v. United States,* 354 U.S. 118, [77 S.Ct. 1145, 1 L.Ed.2d 1225]." 364 U.S. at 380, 81 S.Ct. at 143.

■ A plain reading of *Curcio* and *McPhaul* leads to the conclusion that the duty of the putative custodian of an organization's records extends beyond mere production or nonproduction: when the agent fails to produce documents that are the subject of a valid summons or subpoena, if called before a court, he must give sworn testimony that he does not possess them. The agent's statement that he does not possess the records at issue is merely part of his duty to comply with a lawful demand for them. It might be called "testimony auxiliary to his nonproduction," by analogy to Judge Learned Hand's holding that an agent must identify the documents he does produce because "testimony auxiliary to the production is as unprivileged as are the documents themselves." *United States v. Austin-Bagley Corp.,* 31 F.2d 229, 234 (2d Cir. 1929). Just as an agent's identification of documents he has produced "merely makes explicit what is implicit in the production itself," *Curcio, supra,* 354 U.S. at 125, 77 S.Ct. at 1150, so does an agent's statement that he does not possess documents he has failed to produce make explicit what is implicit in the nonproduction. Because the agent's testimony is unprivileged, it is not a waiver of his privilege against self-incrimination as to other matters. The agent cannot be interrogated further unless, at this point, he voluntarily waives his Fifth Amendment privilege or is granted immunity. The Government is then free to attempt to establish by extrinsic evidence that the documents exist in the agent's custody or control, or that the agent destroyed the documents.

■ Accordingly, we hold that Pergament's statement in his affidavit that he did not possess the cash register tapes and reconciliation statements called for in the summons was compelled under *McPhaul* and was not a waiver of his Fifth Amendment privilege. Were we to conclude, however, that Pergament's statement was not strictly compelled by *McPhaul,* it would not necessarily follow that a waiver had occurred. The Supreme Court has taught us that the Fifth Amendment is a fundamental right that "must not be interpreted in a hostile or niggardly spirit," *Ullman v. United States,* 350 U.S. 422, 426, 76 S.Ct. 497, 500, 100 L.Ed. 511 (1956), and that courts

---

5. The following exchange occurred:

"Mr. Tavenner: The question is as to whether or not you are refusing to produce the records directed to be produced under the subpoena?

"Mr. McPhaul: My answer to that is, I refuse to answer this or any questions which deal with possession or custody of the books and records called for in this subpoena. I claim my privilege under the fifth amendment of the United States Constitution.

"Mr. Tavenner: My question to you was not answered by that statement, in my judgment. My question was whether or not you are refusing to produce the records which you were directed to produce under this subpoena?

"Mr. McPhaul: I have answered it in this statement.

"Mr. Tavenner: No sir. You have stated that you refuse to answer any questions pertaining to them. I have not asked you a question that pertains to them. I have asked you to produce the records. Now, will you produce them?

"Mr. McPhaul: I will not."
364 U.S. at 376, 81 S.Ct. at 141.

must "indulge every reasonable presumption against waiver," *Emspak v. United States,* 349 U.S. 190, 198, 75 S.Ct. 687, 692, 99 L.Ed. 997 (1955).

The facts presented are that, in response to two IRS summonses, Pergament initially made broad and unequivocal claims of his Fifth Amendment privilege and refused to answer any substantive question. In his affidavit to the district court, his statement that he did not possess the documents called for immediately was followed, in the same numbered paragraph, by another assertion that he would not answer any further questions on Fifth Amendment grounds. Pergament thus attempted to navigate the perilous straits between contempt for not performing his duty as a corporate agent and waiver of his Fifth Amendment rights. Were we to find that Pergament's statement was not strictly compelled under our reading of the case law, a finding would not necessarily follow that a voluntary waiver had occurred. *See Emspak v. United States,* 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997 (1955); *Smith v. United States,* 337 U.S. 137 (1949).

*Presser v. United States,* 109 U.S.App. D.C. 99, 284 F.2d 233 (1960), *cert. denied,* 365 U.S. 816, 81 S.Ct. 694, 5 L.Ed.2d 696 (1961), is relied upon by Petitioners in their brief and cited by the district court in its memorandum and order of October 18, 1977, and its memorandum endorsement denying reargument of November 10, 1977. *Presser* is distinguishable, however, because it involved a subpoena for a union official's personal records. Presser was free not to answer all questions. Once he produced some of the records called for and testified that he had complied with the subpoena to the best of his ability, he was found to have waived his privilege against self-incrimination.

### III

We turn to Respondents' two other grounds for appeal. The second point they argue is that the district court lacked jurisdiction to enter its order of July 5, 1978, on the ground that the court's earlier decision denying enforcement of the summons terminated the entire enforcement proceeding. In order to compel further document production or testimony, Respondents argue, the IRS must issue a new summons.

We reject Respondents' argument. The district court's finding in its memorandum and order of October 18, 1977, that Pergament had waived his Fifth Amendment privilege, together with its statement that the IRS might establish the existence of the records through Pergament's testimony, creates a strong inference that the *ad testificandum* portion of the summons remained in effect despite the court's denial of the IRS application to enforce the demand for records. Whatever doubt might have remained was clarified by the court's memorandum endorsement of June 9, 1978 which stated: "the denial of enforcement of the summons without prejudice was only with respect to production of the records of O'Henry's Film Works. . . . [T]he government is entitled to an order enforcing the summons insofar as appropriate testimony of Mr. Pergament is concerned . . . ." We do not find that the district court's interpretation of its own memorandum and order was incorrect.

Respondents' third argument is that the district court erred in not reaching a finding as to the institutional good faith of the IRS, and that discovery and an evidentiary hearing are required for a determination of that question, under *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). Respondents' counsel's affidavit, submitted in response to Petitioners' first enforcement application, proffered the following evidence on the question of institutional bad faith: three statements by an IRS Special Agent to third parties that there was a "possibility of criminal violations" by Respondent O'Henry's; and a five-month lapse in communications between the IRS and Respondents' counsel, from which counsel inferred that the civil audit had been terminated. Respondents now argue further that the affidavits submitted by Petitioners in support of their initial enforcement application are

presently one-and-a-half years old, and may not bear on the present purpose of the IRS. The affidavits in support of the initial enforcement proceeding had stated that no recommendation for criminal prosecution had been made and that no final determination of the corporation's tax liability had been made.

The requirements for enforcement of an IRS summons were set out in *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964):

> [The Commissioner of Internal Revenue] need not meet any standard of probable cause to obtain enforcement of his summons . . . . He must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed . . . . .

▓▓▓▓▓▓ Implicit in the district court's order of July 5, 1978, is a finding that Petitioners had made such a showing. Once the Government has made this showing in an enforcement proceeding, the burden shifts to the taxpayer to show abuse of process (*i. e.,* bad faith on the part of the IRS), *Powell, supra,* 379 U.S. at 58, 85 S.Ct. 248. *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), attempted to clarify the good faith standard as applied to criminal investigations, but left open the question whether a criminal investigative purpose could ever constitute bad faith prior to an IRS recommendation of criminal prosecution to the Justice Department. *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), held that since the IRS is authorized by statute to pursue investigations with mixed civil and criminal elements, institutional bad faith could be

found prior to a recommendation for prosecution where the IRS, as an institution, had abandoned all civil tax determination purposes.[6] Examples of such abandonment are where the IRS has made an institutional commitment to refer a case to the Justice Department for criminal prosecution but has delayed submitting the referral in order to gather additional evidence for the prosecution, and other instances where the IRS is acting merely as an investigative agency for other departments. 437 U.S. at 316–17, 98 S.Ct. 2357. However, "those opposing enforcement of a summons do bear the burden to disprove the actual existence of a valid civil tax determination or collection purpose by the Service." 437 U.S. at 316, 98 S.Ct. at 2367. Furthermore, even limited discovery on the question of institutional bad faith will not be ordered unless the taxpayer makes "a substantial preliminary showing." *United States v. Morgan Guaranty Trust Co.,* 572 F.2d 36, 43 n. 9 (2d Cir.), *cert. denied,* 439 U.S. 822, 99 S.Ct. 89, 58 L.Ed.2d 114 (1978).

▓▓▓▓▓▓ The three statements made by an IRS Special Agent that there was "a possibility of criminal violations" by O'Henry's do not create any showing of bad faith by the IRS because, as noted, the IRS is authorized to pursue an investigation with mixed civil and criminal elements, and the possibility of a criminal violation is immaterial to the crucial issue: whether there is an absence of civil investigative purpose. The five-month lapse in communications between the IRS and Respondents' counsel, taken together with the present age of the affidavits submitted by Petitioners when they first brought on enforcement proceedings, do not create a substantial preliminary showing of institutional bad faith sufficient for us to order discovery on the question of the IRS's purpose.

The order of the district court, filed July 5, 1978, is reversed.

---

**6.** *LaSalle* also reaffirmed the holding of *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), that a summons would not be enforceable after the IRS had referred an investigation to the Justice Department for criminal prosecution. 437 U.S. at 312–13, 98 S.Ct. 2357. The appeal before this court raises no evidence at all of such a referral. *Cf. United States v. Marine Midland Bank,* 585 F.2d 36 (2d Cir. 1978) (per curiam) (further disclosure by IRS affidavit ordered on showing by taxpayer that recommendation for criminal prosecution had reached at least the IRS Regional Counsel's office).